### GALE *v.* DRAKE, Ex'R.

A bequest of "all my accounts" does not pass a deposit in a savings bank; but a bequest of "all my personal property of whatever kind, except my notes, bonds, and accounts "—*held*, to include such a deposit.

ASSUMPSIT, by Franklin Gale against Almon F. Drake, Ex'r, to recover $347.52, which the plaintiff claimed as legatee by the will of Israel N. Gale, the defendant's testator.  Said Israel N. Gale, by will dated December 11, 1868, made the following bequests :—" Second : I give and bequeath unto my sister, Lucina Drake, wife of Almon F. Drake, of Newton, all my personal property of whatever kind, except my notes, bonds, and accounts.  Third : I give and bequeath unto my brother, Franklin Gale, of Kingston, all my personal property, including notes and bonds, &c., that I have not *hereto* disposed of, after the payment of my just debts and funeral expenses," &c.

The testator died in the fall of 1869.  His will was proved in the probate court, and the defendant appointed executor October 13, 1869: April 19, 1867, the deceased deposited in the Manchester Savings Bank $300, and took a deposit book therefor in the usual form.  This sum, with the dividends, amounted to $347.52, December 16, 1869, which was on that day withdrawn from the bank by the defendant, and, as he testified, paid over by him to his wife.  It was never paid to the plaintiff, and has not been accounted for in the administration of the estate; and the question, upon the construction of the will, was, whether the plaintiff, or the defendant's wife, took this fund as legatees under the will.  The defendant claimed, further, that said deposit book was given by the deceased to his wife ; and whether that was so or not was the main question of fact submitted to the court.  The defendant was called as a witness by the plaintiff.  He testified, among other things, that the deceased was at his house when he wrote the will, and stayed there two or three weeks after, and had been there long enough before to make nearly six months in all ; that he was in feeble health, and while there during that time received care and attention, as a sick man, from his wife ; was boarded at the defendant's expense, which the evidence tended to show was about $3 per week.  " When he left, he wanted to pay for his board.  My wife told him he came there on a visit, and she did n't want any pay—she would n't set any price.  He went into his room, and came out with his bank book, and handed it

to my wife and told her to keep that till he wanted it, or called for it. He never came back to our house, and never called for the book." The deceased was at that time about sixty-three or sixty-four years of age. He had but a small amount of property besides this deposit, and it did not appear that he had made any provision for his support or care except what was afforded by his property.

After the time the will was made, the testator had four (N. H.) State bonds which he disposed of, about three months before his death, for a piece of land.

The testator kept account books, and had some small sums of money due him on account, some of which were collected by him in his lifetime, after making his will, and some by his executor. There was also a note of some $280, which was collected by the executor, and accounted for on settlement in the probate court.

Against the defendant's objection, the wife of the plaintiff was admitted and sworn as a witness generally for the plaintiff.

She testified as follows: " The defendant and his wife were at our house soon after the death of Israel N. Gale. I heard Mrs. Drake say, in the presence of the defendant,—' He spoke of paying his board, and she told him he did n't owe anything, and he said he thought he should go to Deerfield and get in some of his debts to pay his board.' She said she told him he did n't owe her anything, because he had worked for her, carrying on her farm, before she married the defendant." The above evidence was specially excepted to by the defendant.

The defendant testified that his wife did at one time owe the deceased $50 for work on her farm, but that she paid him before his death.

The above is, in substance, all the evidence bearing upon the question whether there was a valid gift of the book to the defendant's wife; and upon this evidence the court found that the book and fund on deposit in the savings bank were the property of the deceased at the time of his death, so that their disposition must be governed by the construction of the will. The defendant moved to set aside said finding for error in admitting the above evidence.

*Small,* for the plaintiff.

I. It is plain, by the terms of the will, that the defendant's wife did not take, but the plaintiff did take, all the testator's notes, bonds, and accounts. If, therefore, the deposit in the savings bank, together with the bank book which the testator took and subsequently held, comes within the meaning of the term *accounts* as used in the will, the plaintiff is entitled to this fund under the provisions of the will. The language employed by the will is quite expressive. It not only gives all the accounts of the testator to the plaintiff, but it expressly excludes them from the bequest of the other personal property. It gives all his personal property, excepting his bonds, notes, and accounts, to Mrs. Drake, and then gives all his personal property, including notes, bonds, &c., theretofore disposed of, to the plaintiff.

The court will be bound by the intention of the testator, gathered from the whole will. The will is quite general in its terms. The language of the bequest to Mrs. Drake is especially so. It gives nothing to her specifically. It excepts, from the bequest to her, certain classes of property, and gives these classes of property to the plaintiff. It is conceded that the money in question must fall within one of these two provisions of the will. No accounts are in terms given by the will to Mrs. Drake.

Accounts are, by the terms of the will, given to the plaintiff. The language used is of the broadest and most comprehensive kind, embracing everything that can fairly be denominated to be, or understood by the testator to be, an account. That this deposit, together with the book of deposit which the testator took and held, constituted an *account*, seems too clear for argument. In the first place, it was treated by the parties—the testator and the bank—as an account. It was entered on the books of the bank as an account, and was duplicated into the book which the testator held as an account. And the dividends are from time to time added thereto, making an account of several items.

That this deposit, thus entered and copied with the knowledge of the testator, and which was in the form of an account, must have been regarded by him as an account with the savings bank, just as it purported on its face to be, would seem entirely clear.

There is nothing, it is true, upon the face of the will that would seem to indicate that the testator had in his mind any particular kind or class of accounts in dictating the will; but it is plain that he must have regarded *this* as an account, and the language he employed is appropriate to embrace all kinds of accounts.

This account belonged to a class of accounts well known, defined, and understood.

It was an account in bank which Bouvier (1 Bouvier's Law Dictionary 49) defines to be,—

First: "A fund which merchants, traders, and others have deposited in the common cash of some bank, to be drawn out by checks, from time to time, as the depositor may require.

Second: " The statement of the amount deposited and drawn, which is kept in duplicate, one in the depositor's bank book and the other in the books of the bank."

*Account* is a term of extensive application. It is defined by Worcester to signify (1) "A register of debts and credits, or of receipts and expenditures; a computation applied to sums of money."

" He keeps his account with the bank."—*Brande.*

This account falls exactly within the above definitions.

This was such an account as would have supported an action upon an account stated. *Filer* v. *Peebles,* 8 N. H. 226 ; *Ryan* v. *Rand,* 26 N. H. 12; *Knowles* v. *Michel,* 13 East 249 ; *Highmore* v. *Primrose,* 5 M. & S. 65.

In the case of *Perkins* v. *Mathes,* 49 N. H. 107, the court held that

under the term " all my books and papers," promissory notes, belonging to the testatrix and held by and payable to her person, were embraced in the word " papers."

I submit, then, that this was an account within the fair meaning of that term; that it was in the·form of an account made so by the parties to it, and that what the testator regarded as an account must, for the purpose of interpreting this will, be held to be an account, regardless of the question as to the form in which it was kept.

II. The deposit book was not given to Mrs. Drake.

This book of deposit containing the account was but a *chose in action*, incapable of transfer without assignment; and there was no assignment. 2 Kent 438; *Sanborn* v. *Goodhue*, 28 N. H. 56.

It was not a valid gift, *inter vivos*, for that goes into immediate and absolute effect, the donor parting not only with the possession, but with the dominion over the property. *Craig* v. *Kittredge*, 46 N. H. 58, and authorities there cited; also, *Dole* v. *Lincoln*, 31 Me. 422; *Grover* v. *Grover*, 24 Pick. 261.

It was not a *donatio causa mortis*, for it was not delivered under any special apprehension of death. *Craig* v. *Kittredge*, *ante*, and authorities there cited.

The delivery was not intended as a gift, but merely for custody.

III. The evidence of plaintiff's wife was properly received.

Her examination upon the point to which her testimony was offered could in no way lead to a violation of marital confidence, and the evidence itself was competent and material. *Jackson* v. *Barron*, 37 N. H. 500; *Ryan* v. *Follansbee*, 47 N. H. 100.

*Hatch*, for the defendant.

I. The money deposited in the Manchester Savings Bank is not described by the words " notes, bonds," or " accounts;" consequently it is not included in the bequest to plaintiff.

1. The testator used the word " accounts " in the ordinary sense of debts due from individuals, such as are commonly charged upon the account book of the creditor.

Webster defines an " account " to be an entry in a book, or on paper, of things bought or sold, of payments, services, &c.

A deposit in a savings bank is not an account, any more than a note, bond, or judgment is an account. It is not so understood in common conversation. *Adams* v. *Jones*, 6 Jones Eq. (N. C.) 221 (U. S. Dig., vol. 25, p. 161, sec. 78); *Hastings* v. *Hane*, 6 Sim. 67.

2. The gift is of my " accounts." If in any sense the deposit was an account, it was an account of the bank and not of the testator.

3. The evidence shows that the defendant's wife was the sister of the testator; that she had been kind to him in sickness; that he had attempted to provide for her by gift of this very bank deposit; and the case shows the bequest to her is illusory, and that she will receive little or nothing, unless she may take the money in the bank.

See opinion of FOSTER, J., in *Perkins* v. *Mathes*, 49 N. H. 107, to the point that the will is to be so construed as to give a substantial value to the bequest.

II. The bank book had been given to Mrs. Drake by the testator in his lifetime.

1. The delivery was perfect.

2. The bank book was in the " usual form," and passed by delivery. There is nothing in the case to show that any formal assignment was necessary. See *Perkins* v. *Mathes*, cited above.

And a gift of a chose in action is perfect without written assignment. See *Grover* v. *Grover*, 24 Pick. 261 ; *Sessions* v. *Moseley*, 4 Cush. 87 ; *Bates* v. *Kempton*, 7 Gray 382 ; *Borneman* v. *Sidlinger*, 18 Me. 225 ; *Coutant* v. *Schuyler*, 1 Paige 316 ; 2 Kent's Com. 447 ; *Marston* v. *Marston*, 21 N. H. 491, 496 ; *Abbott* v. *Tenney*, 18 N. H. 110 ; *Sanborn* v. *Berry*, Rockingham county, not reported.

3. The fact that the testator reserved the right to call for the book does not affect the validity of the gift. *Stone* v. *Hackett*, 12 Gray 232.

III. The wife of the plaintiff was improperly admitted as a witness. The action is against an executor who did not testify on his own motion. Gen. Stats., ch. 209, secs. 16, 22 ; *State* v. *Moulton*, 48 N. H. 485.

The conversation related by the witness took place in the presence of the husband.

And the conversation was *inter alios*, and ought not to prejudice the defendant.

FOSTER, J. The finding of the court that the deposit book and fund in the savings bank were the property of the deceased at the time of his death, so that their disposition must be governed by the construction of the will, was, in our opinion, a result fully-justified, if not demanded, by the evidence.

Whether a delivery of the deposit book would be valid as a gift *inter vivos*, or *donatio causa mortis*, so as to convey an equitable title to the fund represented by it, which a court of law would recognize and enforce in the absence of any written assignment, order, or other form of transfer, is a question about which the authorities are conflicting, and which it is not necessary for us to decide in the present case. See 2 Kent's Com. 447 ; *Grover* v. *Grover*, 24 Pick. 263 ; *Sessions* v. *Moseley*, 4 Cush. 87 ; *Borneman* v. *Sidlinger*, 18 Me. 225 ; *Sanborn* v. *Goodhue*, 28 N. H. 56 ; *Flint* v. *Pattee*, 33 N. H. 522 ; *Jones* v. *Brown*, 34 N. H. 445.

A *donatio inter vivos* is distinguished from a *donatio causa mortis* in this, that the former takes place when the giver is not in any immediate apprehension of death. 1 Bouv. Inst., n. 712 ; 1 Bouv. Dict. 502.

By such donation, completed by delivery, the property vests immediately and irrevocably in the donee, and the donor has no more right or control over it than any other person. *Grover* v. *Grover*, 24 Pick. 261.

Such a gift cannot be established by proof, merely, that the testator

delivered the bank book to the defendant's wife to keep " till he wanted it or called for it."

It was equally invalid as a *donatio causa mortis* for the same reason, and because it was not made in his last illness nor in contemplation of death.   1 Bouv. Dict. 502.

It remains to consider the question, To whom did the fund in the savings bank pass, by force of the testator's will ?   Did it go to his brother, the plaintiff, or to his sister, the wife of the defendant ?

In the construction of. a will, the main purpose should always be to give effect, if possible, to the intention of the testator, and to every part of the will.   As we remarked in *Perkins* v. *Mathes*, 49 N. H. 107, " when, as in the present case, a doubt is suggested as to the meaning expressed or the effect intended by the terms of a particular bequest, the clause of the will in question is not to be conclusively interpreted as an isolated and independent provision, but the intention is to be ascertained from a full view of everything contained within the four corners of the instrument."   We may also properly take into account all the circumstances surrounding the testator, such as the nature and amount of his property and its situation, as well as the situation and circumstances of his family and relatives.   1 Redf. Wills 426, note ; *Trustees* v. *Peaslee*, 15 N. H. 319 ; *Tilton* v. *Tilton*, 32 N. H. 263 ; *Goodhue* v. *Clark*, 37 N. H. 525 ; *Stokes* v. *Salomons*, 9 Hare 75.

Let us examine the present case in the light of these principles of construction.

Apparently, the testator intended to give all his property to his brother and sister, the present litigants.

It does not appear that he entertained any special partiality for the one over the other.

During a recent illness while on a visit to his sister, he had been boarded at an expense to the defendant, her husband, of about $78. For her attention during that time the testator was properly grateful, and expressed a desire to recompense her either by paying for his board from the avails of some debts due to him which he proposed to collect for that purpose, or by a gift of the fund in the savings bank, provided he should not subsequently want it or call for it.

The defendant's wife, at this time, was indebted to the testator for his labor on her farm some fifty dollars, but she paid him before his death.

His property, at the date of his will, consisted of this fund in the savings bank, amounting to about $350, four N. H. State bonds, amounting to about $      , a note of about $280, and some small accounts against various people, which were of little value in fact, though perhaps of less value than he supposed.

It is plain that, by the terms of the will, the defendant's wife did not take the notes, bonds, or accounts—which are expressly excepted from the bequest to her, and expressly given to her brother, the plaintiff; that is, she did not take, and her brother did take, property amounting, in all, to a sum considerably larger than the fund in the savings bank.

The fact that about three months before his death the testator purchased a piece of land in exchange for the State bonds, is not a circumstance which can be regarded in the interpretation of the will executed before this exchange was made or contemplated.

If the fund in the bank, then, was intended for the testator's sister, the legacy to her would still be less in amount and value than one half the testator's property, and less than the value of the legacy to his brother.

This fund would pass to the sister under the bequest of personal property, unless it was intended to be given to the brother under the denomination of "accounts." *Scorey* v. *Harrison*, 17 Eng. L. & Eq. 46.

It is a very familiar rule of construction that the words of a will must receive their *usual* and *ordinary* popular signification, unless there is something in the context or the subject-matter clearly indicating a different use of the terms employed. 1 Redf. Wills 438 ; *Perkins* v. *Mathes*, before cited.

As an illustration of this rule, it has been held that a bequest of *money* must be taken in its ordinary signification ; but under that term stock in the public funds or private corporations will pass, where there was *no money* upon which the bequest could operate. *Chapman* v. *Reynolds*, 6 Jur. N. S. 440.

It cannot be pretended that a deposit in a savings bank would, in ordinary popular language and understanding, be denominated an *account*. It is not, like a *"bank account,"* properly so called, which is defined to be " a fund which merchants, traders, and others have deposited into the common cash of some bank, to be drawn out by checks, from time to time, as the owner or depositor may require." 1 Bouv. Law Dic. 187. In this sense it might possibly be regarded and so termed an account, by a merchant or banker who is said to " keep his account with the bank." But the term " accounts," in the ordinary and popular understanding with which the testator must be understood to regard it, is that statement of mutual demands, in the nature of debt and credit, which arise out of contracts and dealings between parties, and the items of which are entered from time to time in the books commonly known as account books. 1 Bouv. Law Dic. 53, 55. " An entry in a book, or on paper, of things bought or sold, of payments, services, &c., including the names of the parties to the transaction, date and price or value of the thing." Webster's Dic.

An " account," within the meaning of the statute authorizing the appointment of auditors, relates to some matter of debt and credit between parties. *Whitwell* v. *Willard*, 1 Met. 216.

In the present case there were actual and proper accounts which the testator held against individuals, upon which the term used in the testator's will *could* operate.

Another familiar rule in the interpretation of wills is, that the testator is to be considered as intending a benefit to the object of his gift. *Wallace* v. *Wallace*, 23 N. H. 149 ; *Perkins* v. *Mathes*, before cited.

What benefit will his sister derive from the will, if this fund in the

bank, as well as all the testator's notes, bonds, and accounts, are to be excluded from the legacy.? It is not apparent that she will receive anything whatever, unless she may take the money in the bank.

We are therefore of the opinion that the defendant's wife is entitled to the fund, and that this suit against the executor cannot be maintained.

The case, since it does not provide for a judgment, but only calls for our construction of the will,

*Must be discharged.*