## DODSON v. KEMPER MILITARY SCHOOL, Inc.

### No. 3650.

Court of Civil Appeals of Texas. Amarillo.
Sept. 23, 1931.

Rehearing Denied Oct. 14, 1931.

Killough & Dotson, of Vernon, for appellant.

W. D. Hollars, of Vernon, for appellee.

RANDOLPH, J.

This suit was filed by Kemper Military School, Inc., against appellant, Dodson, to recover the sum of $614.60 alleged to be due to the appellee as tuition and for certain supplies furnished J. E. Dodson, Jr., son of the appellant, who was alleged to have been a student in appellee's school, situated at Boonville, Mo. Attached to the appellee's petition as an exhibit was a duly verified account setting out the items of indebtedness sued on.

The appellant filed an answer containing a general denial and specially pleading fraud and failure of consideration.

The appellant's propositions upon which he bases his appeal present error on the part of the trial court involving the same general question as follows: There being no verdict of the jury in answer to special issues showing that the appellant was indebted to the appellee in the sum of $614.60, the court erred in rendering judgment against appellant for that amount; the case having been submitted to a jury. The trial court erred in overruling appellant's motion for judgment in his favor; the court having submitted the case to the jury upon special issues, and having failed to submit any issue with reference to the grounds of recovery alleged in appellee's petition, and appellee having failed to request the submission of any such special issue, the trial court erred in rendering judgment for appellee.

The court submitted the following issues to the jury, which were answered by the jury as indicated after each question:

"Special Issue No. 1. At the time the defendant agreed to send his son to Kemper Military School, did or not the representative of said school represent to the defendant that said school was one of the best schools in the United States to prepare students to take up the study of medicine and surgery, and that the professors who taught chemistry, zoology and other scientific studies in said school were well qualified both from the standpoint of character and scholarship to teach such pre-medic students. Answer yes or no. Answer: Yes."

"Special Issue No. 2. Did the defendant believe said representations at the time he sent his son to Kemper Military School? Answer yes or no. Answer: Yes."

"Special Issue No. 3. Was said representation true or false? Answer as you find the facts to be. Answer: True."

"Special Issue No. 4. Has the defendant been damaged in any amount by reason of any misrepresentations on the part of the

plaintiff or its representatives, if any were made? Answer yes or no. Answer: No."

"Special Issue No. 5. If you have answered special issue No. 4 'Yes,' then answer the following special issue:

"What amount do you find to be the reasonable amount of his damages, sustained by the defendant, if any? Answer in dollars and cents. Answer: ———."

"Special Issue No. 6. Did the instructors or any of them in the plaintiff institution mistreat J. E. Dodson, Jr.? Answer Yes or No. Answer: Yes."

"Special Issue No. 7. If you have answered the preceding issue No. 6, 'Yes,' then answer the following special issue:

"Was such treatment unreasonable? Answer yes or no. Answer: No."

"Special Issue No. 8. Was such treatment of such a nature as to be calculated to cause the said J. E. Dodson, Jr., to withdraw from said school before the end of the term? Answer yes or no. Answer: Yes."

"Special Issue No. 9. Was there a failure of consideration of the agreement on the part of the defendant to pay tuition to plaintiff in that the plaintiff failed to furnish the facilities and instructors of the kind represented by its representatives? Answer yes or no. Answer: No."

"Special Issue No. 10. Was there a failure of consideration of the contract sued upon in that the plaintiff or its instructors failed to render the services to J. E. Dodson, Jr., agreed to be furnished by it? Answer yes or no. Answer: No."

The appellee contends that there was evidence sustaining its pleading, which, being undisputed, authorized the court to pass on the question of indebtedness due and owing on the account pleaded, without submitting the issue to the jury. In other words, the question of the amount of the indebtedness not being a disputed question, no finding of the jury was necessary.

The pleading sets out the items upon which appellee based its claim for recovery. While the appellee introduced no witnesses to testify to the correctness of the account, or to the reasonableness of the charge for the services rendered, or the value of the items furnished, and placed the appellant on the stand to testify for it, the evidence nowhere sustains the pleading of the appellee, and fails to furnish a basis for such judgment.

The appellant's answer and cross-action admits that he enrolled his son in appellee's school; that said son attended said school from the month of September, 1928, to the month of March, 1929; that he (appellant) paid the sum of $315 to the appellee at the time he enrolled his son in the school; he admits that he wrote the three letters introduced, addressed to an officer of the school,

one of which was dated March 13, 1929, which is as follows:

"J. E. Dodson, M. D.,
"201-2 Herring National Building,
"Vernon, Texas, March 13, 1929.
"Maj. A. B. Bates, Sec'y. & Treas., Boonville, Mo.

"Dear Sir: I have been trying to make arrangements to send you some money. However, it seems as though I am going to fail for the present. As you know the finances of the country have been close. Crops short, work all shut down here, all the conditions bad. Now I do not think that it will be this way long, and just as quickly as I get it I will pay you. I do not have the money now. With best regards,
"Yours truly,        J. E. Dodson."

The second letter, which is as follows:

"March 18, 1929.
"Major A. B. Bates, Secty. and Treas., Boonville, Mo.

"Dear Sir: Your letter of March 16, 1929 rec'd this a. m. I regret very much that conditions, such as they are, make it impossible for me at present to pay you any money. I would gladly do so, but I do not have it at present and finances are just as bad here as they are all over the country. We are unable to collect anything at all and the little amount of cash that we get goes very quickly. I will pay you just as soon as I possibly can get the money. At present I will give you a note for the amount. This is the very best that I can do now and if this does not meet with your acceptance, then I shall be forced to accept the sending of the boy home. Whatever you decide to do. I want to assure you that you will be paid with interest. And should you not be willing to go on I suggest that you notify me at once that I may act on same and send for him as I do not think that a few days will make any difference, and yet it will take the few days expense off of you. And as to the financial standing and etc., you must realize that there are times when men with A-1 rating are unable to borrow any money. I thank you for your kind suggestions.
"Very sincerely,        J. E. Dodson."

And the third letter is as follows:

"3—31st, 1929.
"A. M. Hitch, Supt., Kemper, Boonville, Mo.

"Dear Sir: I of course regret very much James leaving school, and especially the manner in which he was forced to adopt in leaving. However, since his arrival at home we have decided that under the circumstances everyone concerned would be better off for him to remain at home, at least the rest of this year. You will please for'd his personal belongings to me here and I shall greatly appreciate it, and he needs his clothing.

Thanking you for past favors and assuring you that I intend in a short time to get you some money, I am,

"Yours truly, J. E. Dodson."

It will appear from these letters that the appellant entered his son in the appellee's school and was aware of and acknowledged the fact that he was indebted to it. As to the amount of his debt to appellee, he testifies that he received a statement of the account from the school, but did not pay it; that he paid them one payment. "That sheet which you have shows all that I have ever paid. I think that $614.60 was the amount that was rendered to me in that bill but I am not sure about that. * * * That is the bill they rendered me and at no time have I ever paid it." Two of the above-quoted letters were written before the son left the school. The third was written after the son had returned home and after the appellant had full knowledge of the items and total sums owing on the account as stated in the account.

The appellant further testified in relation to the promise to send them some money as follows: "However, I will state that I did not know how much I was going to get them at that time, whether I would get them any or not. At that time I did not know whether I owed them any money or not, that does not say whether I owed them or not, I said I would try and get them some. I was figuring on getting them some money because I didn't know but what I might decide I owed them. I do not know that I owed them the amount in that statement, there was some questions about the bill that they had rendered; I wanted to inquire about how much I owed, if any. At the time I enrolled my son in this school they did not tell me how much the tuition would be; I think they did but I am not sure they did; he did not give any definite reply, he was up to my house one night, he and Robert Lutz were there talking to my wife and myself and Tucker was the man's name, and this question came up and he said that would be found in the catalog but I did not have a catalog. I suppose it is in the catalog but I did not have one at that time. That catalog which you have was not exhibited to me at that time, not for quite a while afterwards. * * * As to whether this bill is due or not, will state that I do not know a thing in the world about the bill. I do not know whether I paid this bill up or not, and I do not know whether it is correct or not. My son doesn't say that it is correct and I do not say it is correct. I would not say that the bill is correct, I do not know whether it is or is not correct."

■ This proof is wholly lacking in establishing the account sued on. No express contract is shown to have been entered into. No definite understanding as to the terms upon which same was to be paid. There is no proof that the articles alleged to have been furnished to appellant's son were furnished. Neither is there any proof that the charges for same were reasonable.

■ It was the duty of the appellee to introduce evidence to support its pleadings. The appellee sought in its petition for a recovery for tuition, goods, wares, and merchandise as same were reasonably worth, and there is no proof to sustain such pleading.

■ The statement of facts does not show that the verified account was ever introduced in evidence, but, if it had been offered, it would not have been admissible to sustain the allegations of appellant's petition, for the reason that it is not such an account as is provable under article 3736, Revised Statutes of Texas. Such article provides: "When any action or defense is founded upon an open account, supported by the affidavit of the party, his agent or attorney, taken before some officer authorized to administer oaths, to the effect that such account is, within the knowledge of affiant, just and true, that it is due, and that all just and lawful offsets, payments and credits have been allowed, the same shall be taken as prima facie evidence thereof, unless the party resisting such claim shall, before an announcement of ready for trial in said cause, file a written denial, under oath, stating that such account is not just or true, in whole or in part, and if in part only, stating the items and particulars which are unjust; provided, that when such counter affidavit shall be filed on the day of the trial, the party claiming under such verified account shall have the right to continue such cause until the next term of court; when he fails to file such affidavit, he shall not be permitted to deny the account, or any item therein as the case may be."

The account sued on is not an "open," account within the meaning of such statute.

"An 'account' has been defined to be 'a detailed statement of the mutual demands in the nature of debt and credit between parties, arising out of contracts or some fiduciary relation.'" McCamant v. Batsell, 59 Tex. 363, 367.

"As used in the statutes of this state, in act referred to, we believe that the word 'account' is used in its popular sense, rather than in a technical sense, and that it applies to transactions between persons in which, by sale upon the one side and purchase upon the other, the title to personal property passes from the one to the other, and the relation of debtor and creditor is thereby created by general course of dealing; and that it does not mean one or more isolated transactions rest-

ing upon special contract." McCamant v. Batsell, supra. See, also, McDaniel v. National Steam Laundry Co., 112 Tex. 54, 244 S. W. 135; Watson ·Co., Builders, v. Bleeker et al. (Tex. Civ. App.) 269 S. W. 147.

We therefore reverse the trial court's judgment and remand the cause for a new trial.