## HOFFER OIL CORPORATION v. HUGHES.

### No. 12583.

Court of Civil Appeals of Texas. Fort Worth.
Jan. 9, 1932.

Rehearing Denied Feb. 13, 1932.

Second Rehearing Denied Feb. 20, 1932.

H. A. Turner, of Fort Worth, for appellant.

Ben W. Tipton, of Electra, and Weeks, Morrow, Francis & Hankerson, of Wichita Falls, for appellee.

BUCK, J.

This case was before this court about February 1929, and is published in 16 S.W.(2d) 901, to which we refer for a fuller statement of the facts in the case. In that suit the court gave a peremptory instruction. We reversed the judgment and remanded the cause, and in the case now before us the trial court submitted to the jury the facts. The suit was by Hal Hughes and against the Hoffer Oil Corporation, Hughes claiming that he had a contract with the Hoffer Oil Corporation by the terms of which the corporation was to pay him $5,000, if he drilled a well in King county to a depth of 3,500 feet, or to a less depth if oil or gas was discovered, or if the Hoffer Oil Corporation should conclude to stop the work on the well. Hughes alleged that after he had gone down to some 1,590 feet the corporation ordered him to discontinue the drilling, and that though he waited some 4½ or 5 months and did not engage in other work in the meantime, the Hoffer Oil Corporation did not order him to continue the drilling.

The case was submitted to a jury upon special issues, and the jury found: (1) That the Hoffer Oil Corporation discharged Hughes without cause; (2) that the Hoffer Oil Corporation discharged Hal Hughes on March 24, 1926; (3) that Hal Hughes could and would have finished the well to a depth of 3,500 feet or to a depth where oil and gas be found in paying quantities at a less depth if the Hoffer Oil Corporation had not discharged him and had furnished what it agreed to furnish; (4) that Hal Hughes waited on orders and held himself ready to complete the well for 4½ or 5 months; (5) that it would have required Hughes some 4½ or 5 months to finish the well if the Hoffer Oil Corporation had furnished what they agreed

to furnish under the contract; (6) that according to the contract said Hoffer Oil Corporation and Hal Hughes agreed as to what Hal Hughes would be entitled to receive as compensation in the event the well was completed at a depth less than 3,500 feet, and the said amount was $5,000; (7) that the Hoffer Oil Corporation and Hal Hughes did not agree that the Hoffer Oil Corporation could stop the drilling of the well in less than 3,500 feet unless oil or gas were found in paying quantities at a less depth; (8) that the plaintiff and defendant, by the written contract between them, contemplated at the time it was made that plaintiff should be paid the entire sum of $5,000 only upon the completion of the well to such depth as oil or gas should be procured in paying quantities, not to exceed the depth of 3,500 feet.

Upon the verdict of the jury the court granted judgment for plaintiff for $2,550, the defendant having theretofore paid $2,450 of the total amount. From this judgment the defendant has appealed.

### Opinion.

The contract upon which plaintiff below sued was set out in a letter written by appellant to appellee, and signed and accepted by appellee as follows:

"Mr. Hal Hughes,

"Electra, Texas.

"Dear Sir:

"Referring to our discussion this morning concerning the drilling of a well for this company on what is known as the Patton lands in King County, Texas, I hereby wish to confirm the understanding we had this morning:

"You agree to take care of this work, furnish all of the labor necessary for the completion of this well to be the depth that we wish to go, which will not exceed 3500 feet, and the possible depth as discussed with you this morning. We understand that you have a complete line of rotary equipment and will be able to furnish small parts of such material as might be needed in addition to that now on the ground. You agree to take care of this work and carry the same to completion, you to receive the sum of $5000.00 for your services in connection with the well. You are to be in sole charge of the work and are to look after the entire proposition for this company, which will include the moving of the rig and all material from its present location to the new location. We are to pay all bills in connection with labor and repairs to equipment that will be needed in the drilling of this well, you agreeing to furnish free such other necessary equipment with the exception of boilers. The drilling of the well is to be handled under our direction, and formations are to be cored and a small hole drilled ahead if we desire. You agree to immediately take over the work and get the same started to comply with our contract. You are to furnish a man to look after odd jobs on the well who will forward drilling reports and information to this office every day, provided that he reaches Benjamin or can get same into the mail. In the event of formations looking favorable you will take up with Mr. Moss or myself by telephone and get our ideas with reference to same and as to whether or not we want further tests made. In case of oil showings or anything favorable, the well should be shut down immediately and this office notified by wire or telephone.

"Yours very truly,

"Hoffer Oil Corporation,

"T. B. Hoffer, President.

"Accepted:   Hal Hughes."

Appellant urges that the answer of the jury to special issue No. 8, to the effect that plaintiff and defendant by the written contract between them, contemplated at the time it was made that plaintiff should be paid the entire sum of $5,000 only upon the completion of the well to such depth as oil or gas should be procured in paying quantities, not to exceed the depth of 3,500 feet.

The evidence showed that the location of the well was about 29 miles north of the town of Benjamin, Knox county, in the mountains and along the brakes. That the nearest shipping point was Benjamin. In a subsequent conversation between appellee and appellant, represented by T. B. Hoffer, president of the corporation, appellee told Hoffer that he thought it would be best to find a gasoline engine because the water was bad and would have a bad effect on the boiler; that he had had experience with the same kind of water, but not so bad. The water was "gyp." Hughes testified that "gyp" water would burn the crown sheet out of the boilers; he further testified that after he started actual drilling of the well everything looked all right, and the boiler went to the bad; that he continued to run a little and then got the boiler maker out there, and then they would work again. Appellee further testified:

"We stopped drilling about the last of October; we had thoroughly worked the boilers over for about the second occasion, and it would do no good, and it was just up then to them to get a new boiler, or make some different arrangements because we could not go further with the material on the ground; we had in fact from first to last worked them over a good many times and the boiler makers had done about all they could do.

"From October I waited for instructions from the Hoffer Oil Corporation until March 24th, any time they would have told me to go back I would have had to done it; they dismissed me about March 25th, 1926; they stayed shut down all of this time, and I wrote

them to know what they were going to do, because I had more work coming up and if this well was going to be finished I wanted to go ahead and finish it."

On March 24, 1926, the Hoffer Oil Corporation, by F. M. Moss, vice president, wrote appellee the following letter: "With reference to the King County well, wish to advise that we have assigned our interest in the acreage and well to other parties here, and they in turn have a new contract with the land owners for the drilling of the well, I believe it is their intention to skid the rig and drill a cable tool test, using an oil engine for this purpose. I understand from Mr. Capers that you may possibly have a few small tools left at the location, and if you will be good enough to let either he or this office know when you can make a trip to the well he will go out at the same time and check up your material with you. What necessary adjustments, if any, with you can be made after that time."

█ It is evident that the cause of stoppage of the drilling was due to "gyp" water. There is absolutely no evidence in the record as to who was required to furnish the water necessary to the drilling, although the contract provides that the driller was to furnish "all necessary equipment with the exception of the boilers." We are inclined to think that probably under this provision of the contract it was contemplated that the driller was to furnish the proper water for such drilling operations. There is no evidence in the record that the appellee, during the 4½ or 5 months, which he stated and the jury found that he waited for orders to drill the well deeper, attempted to get·any other employment.

"It is not in every case of an unwarranted discharge of an employee that such discharged employee can recover the full amount of his wages or salary for the unexpired term of his employment. Ordinarily, he can recover only the loss he has sustained by reason of such discharge, and he must show that he has used diligence to secure other employment during the unexpired term. The employee is held liable for such wages or salary as he did receive during the unexpired term, or such as he might have received by the exercise of due diligence." Hoffer Oil Corporation v. Hughes (Tex. Civ. App.) 16 S.W.(2d) 901, 906.

In Meade v. Rutledge, 11 Tex. 44, where an overseer was employed during the fall of 1847 for a period of one year and was discharged on January 1, 1848, and sued to recover as damages for breach of contract the full contract price, alleging that he was .ready and willing at all times to perform his part of the contract, our Supreme Court said: "If the offer, by an overseer, to perform service, is equivalent, in every respect, to actual performance, he might, without doing duty for a

day, recover wages for the year—although perhaps he may be engaged during the year elsewhere in some employment equally or perhaps more profitable—or might have been engaged, had he made any attempt to procure employment. This would be too monstrous to be sanctioned by any sound principles of law or rules of equal justice."

In Porter & McMillan v. Burkett et al., 65 Tex. 383, our Supreme Court said, quoting from the headnotes:

"A person who has been stopped in the performance of a contract by the default or by the direction of his employer, is entitled to compensation for the losses he sustains; but he is entitled to compensation only, and not to the gross amount he would have received from his employer had the contract been fulfilled. * * *

"Such person may recover the natural and probable profits his contract would have yielded him, when they are certain, and not contingent, speculative or remote; but he should not receive, when the work is not completed, the same amount of money he would have been entitled to, had the contract been fully executed."

In Enterprise Co. v. Neely (Tex. Civ. App.) 217 S. W. 1088, 1089, it is said:

"It is the general rule of law that a contract must be at least substantially performed according to the terms of the agreement before a party can have any right of action thereon. Linch v. Paris, 80 Tex. 23, 15 S. W. 208; 6 R. C. L. 951 and 966 et seq.

"A plaintiff cannot recover on an entire contract by proving part performance without allegations authorizing recovery upon a quantum meruit," citing cases.

See Osage Oil & Ref. Co. v. Lee Farm. Oil Co. (Tex. Civ. App.) 230 S. W. 518, writ of error refused.

Where a plaintiff seeks to recover the full damages he would have received had he completed the contract and acknowledges that he did not complete the contract, he must show that the failure to complete the contract was due entirely to the fault of the defendant, and that during the interim of his enforced delay he used all reasonable effort to get other employment. There is no evidence in this case that appellee during the 4½ or 5 months of delay exercised any effort to get other employment, or that he got other employment. Hence we conclude that by reason of the affirmative answer of the jury to special issue No. 8, plaintiff did not show himself entitled to recover the full amount, or to recover at all; he having pleaded only the contract and not upon a quantum meruit.

We conclude that the judgment below should be reversed and here rendered for appellant, and it is so ordered.

On Appellee's Motion for Rehearing.

Appellee files an insistent motion for rehearing and directs most of it to an unfortunate expression in our 'original opinion, as follows: "Where a plaintiff seeks to recover the full damages he would have received had he completed the contract and acknowledges that he did not complete the contract, he must show that the failure to complete the contract was due entirely to the fault of the defendant, and that during the interim of his enforced delay he used all reasonable effort to get other employment."

He cites the case of Mansfield Mill & Elevator Co. v. Nichols (Tex. Civ. App.) 265 S. W. 746, 747, where an exception was urged to the insufficiency of appellee's petition on the ground that it made no allowance for sums which appellee earned during the discharge period; the exception stating that, if such allowance had been made in good faith, the amount in controversy would be below the jurisdiction of the district court. The Court of Civil Appeals said: "This exception was properly overruled. In this state it is now settled that the burden both of allegation and proof rests with the defendant in an action for damages for wrongful discharge of a servant, to show that the plaintiff has been engaged in other profitable employment. * * * This holding is in line with the great weight of authority in this country, although the courts of some of the states hold to the contrary."

■■ We withdraw the statement to the effect that the plaintiff must show that the failure to complete his contract was due entirely to the fault of defendant "and that during the interim of his enforced delay he used all reasonable effort to get other employment." It appears, as claimed by appellee, that in Texas, at least, the burden of allegation and proof that a discharged employee by reasonable diligence could have secured other employment, or that he did secure other employment, is upon defendant by defensive pleading and proof. But in the instant case plaintiff sued on the contract upon the theory that he had fully performed said contract and therefore was entitled to the gross contract price, predicating his action upon the allegation that by the contract appellant had agreed to pay him the gross contract price of $5,000, regardless of the depth to which he drilled the well. The jury found in response to special issue No. 8 that it was within the contemplation of the parties to the contract, at the time it was made, that appellee should be paid the gross contract price of $5,000 only in the event he drilled the well to a depth of 3,500 feet or procured oil and gas in paying quantities at a less depth; there being neither allegation nor proof by appellee of any damages resulting from breach of the contract declared upon,

his suit being based upon the theory that he had fully performed his contract and was entitled to the balance due thereon.

■ "A person who has been stopped in the performance of a contract by the default or by the direction of his employer, is entitled to compensation for the losses he sustains; but he is entitled to compensation only, and not to the gross amount he would have received from his employer had the contract been fulfilled." Porter & McMillan v. Burkett, 65 Tex. 383.

The motion for rehearing is overruled.