# HARNISCHFEGER SALES CORPORATION v. PICKERING LUMBER CO. et al.

## No. 11042.

Circuit Court of Appeals, Eighth Circuit.

July 1, 1938.

Rees Turpin, of Kansas City, Mo. (August F. Behrendt, of Kansas City, Mo., on the brief), for appellant.

Paul Barnett, of Kansas City, Mo. (Henry N. Ess, Elton L. Marshall, and Watson, Ess, Groner, Barnett & Whittaker, all of Kansas City, Mo., on the brief), for appellee.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal from the order of the lower court overruling the objections of Harnischfeger Sales Corporation to the classification of claims and to the plan of reorganization in proceedings under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207.

Before Pickering Lumber Company filed its petition for reorganization under the provisions of Section 77B, a receiver had been appointed for it by the lower court, in a suit entitled Harold W. Woodbury, plaintiff, v. Pickering Lumber Company, defendant. In the receivership proceedings, an appeal was taken to this court and in an opinion filed May 11, 1935 (Commerce Trust Co. v. Woodbury, 8 Cir., 77 F.2d 478), this court sustained the lower court in holding that Pickering Lumber Sales Company was an agency or department of the Pickering Lumber Company and that it should be administered by the receiver of the Lumber Company.

In 1930, in an attempt to meet a situation involving financial embarrassment, the Pickering Lumber Company caused the Pickering Lumber Sales Company to be incorporated, and transferred to it a substantial amount of unincumbered assets, receiving in exchange all the stock of the Sales Company. As a part of the transaction, the Sales Company, in a written contract, agreed, among other things, as follows:

"It (Pickering Lumber Sales Company) will assume, pay and discharge when and as they become due the accounts payable of the Lumber Company except the following accounts payable: Payrolls, obligations for slash disposal, merchandise checks and coupons outstanding and personal injury awards."

This court, in Commerce Trust Company v. Woodbury, supra, held that while the Pickering Lumber Sales Company was an agency or department of the Lumber Company, yet the transfer of assets effected by the above noted contract should not be set aside, but that the creditors of the Sales Company, including banks whose claims against the Lumber Company it had agreed to pay, should be paid first from its assets, and that any surplus should be regarded as an asset of the Lumber Company for the payment of its general creditors. When the mandate of this court went down, the lower court entered an order requiring the receiver to respect the integrity of the Sales Company as a separate legal entity and directing that that company should pay its indebtedness, and that after such debts had been paid, any surplus remaining should be made available to the receiver as an asset of the Lumber Company.

On November 30, 1934, before the receiver had taken over the assets of the Sales Company, proceedings under Section 77B of the Bankruptcy Act were taken by the Lumber Company. On December 21, 1934, the Lumber Company filed a petition asking leave to propose a plan for reorganization and for orders relative to the time and man-

ner of filing claims, the classification of creditors, and the time for hearing upon confirmation of the proposed plan. A copy of the proposed plan was attached to the petition. The court entered an order granting leave to file the petition, and ordered the receiver to file a schedule of the claims filed with him as receiver, which should be deemed as filed in the proceedings for reorganization under Section 77B of the Bankruptcy Act without refiling.

Appellant, Harnischfeger Sales Corporation, had filed a claim with the receiver, alleging that on April 17, 1929, the Lumber Company entered into a written contract with it, whereby appellant agreed to construct certain monorail equipment and to furnish a specified number of feet of special track and other operating equipment and materials for an agreed price of $72,100.79, for use in the lumber mill; that appellant caused work to be commenced upon the equipment, and continued with it until May 31, 1929, when it received instructions from the Lumber Company to stop work. The contract contained the following provision:

"Should the purchaser request suspension of construction after work has begun the purchaser agrees to reimburse this company promptly for all direct expenditures for material and labor and engineering services, also for a proportionate share of indirect manufacturing, engineering, selling and general and administrative expenses incurred in connection with the work so far as it has been completed in accordance with invoices to be rendered by us."

The claim was originally in the sum of $44,268, and it was alleged in it that the failure of the Lumber Company and the receiver "to revoke the order of suspension given on May 31, 1929, and the failure to instruct this claimant to proceed with the completion of said work and the delivery thereof in accordance with said contract constitutes a breach of said contract." The claim as filed is for expense of construction, selling expense, lost profit, and interest, and credit is given for salvage value of some of the constructed equipment. The claim was later reduced in amount to $28,229.18, and was finally allowed by the court in the sum of $24,000. No invoices with respect to the contract were ever furnished. The machinery to be constructed was never delivered to the Lumber Company, and the claim included allegations for damage on account of loss of profits. No entry of the amount of damages claimed was made upon the books of appellant, nor upon the books of the Lumber Company.

The claim was allowed without prejudice to the right of the appellant to assert it as a claim against Pickering Lumber Sales Company. Appellant bases its claim against Pickering Lumber Sales Company upon the provision in the contract with the Lumber Company, in which, with certain exceptions, the Sales Company agreed to pay the latter's accounts payable.

The order of December 21, 1934, entered on the filing of the petition for leave to propose plan of reorganization, classified claims of the Pickering Lumber Company without priority. The court limited the time for filing objections to the plan of reorganization to on or before January 4, 1937, and for filing objections to the classification of claims to on or before January 11, 1937. The plan of reorganization as proposed, listed liabilities of the Lumber Company and provided that the holders of all general claims approved by the court should receive 25 per cent of their claims in convertible preferred stock and 75 per cent in common stock of the reorganized company. Provision was made that assets of the Sales Company should be liquidated, and in the event the amount received from the liquidation was insufficient to pay claims against it in full, the deficiency should constitute a general claim against the Lumber Company, if it were also liable on the claim.

Appellant filed objections to the plan of reorganization and to the classification of claims, on the ground that it was entitled to have its claim paid out of the assets of the Pickering Lumber Sales Company. While the court allowed appellant's claim against the Lumber Company, it refused to allow it to share in any of the assets of the Sales Company, and likewise refused to allow its claim against the Sales Company. It is from this order that appellant has taken this appeal. It contends that by the contract between the Pickering Lumber Sales Company and the Pickering Lumber Company, payment of appellant's claim was assumed.

Preliminarily, it may be noted that appellees have moved to dismiss the appeal upon various grounds, but in view of the conclusion which we have reached, we deem it unnecessary to consider this motion.

■ The claim was one for unliquidated damages for the breach of a contract. It sounded in tort. The word "account" is flexible in meaning, depending somewhat on

the surrounding circumstances and the connection in which it is used. The term usually involves some matter of debt and credit, or demands in the nature of debt and credit between parties. It is defined by the Century Dictionary as, "A statement of pecuniary transactions; a record or a course of business dealings between parties." It is said that an account is a list or statement of monetary transactions, such as payments, losses, sales, debits, credits, etc., in most cases showing a balance or result of comparison between items of an opposite nature. Purvis v. Kroner, 18 Or. 414, 23 P. 260; Gale v. Drake, 51 N.H. 78; Saylor v. Hawes, 30 Ariz. 197, 245 P. 354. The term does not ordinarily apply to obligations arising from tort. Barkers Creek Coal Co. v. Alpha-Pocahontas Coal Co., 96 W.Va. 700, 123 S.E. 803; Williams v. Ingle, 99 Or. 358, 195 P. 570; Elks Investment Co. v. Jones, Mo.Sup., 187 S.W. 71; Pierson v. Minnehaha County, 28 S.D. 534, 134 N.W. 212, 38 L.R.A., N.S., 261.

In Elks Investment Co. v. Jones, supra, the Supreme Court of Missouri has said that an account has not been held "so far as our information extends, to include a liability for unliquidated damages resulting from the breach of an entire contract, expressing only an entire consideration." (page 75.) This, we think, is a conclusive answer to the contention of appellant that its claim for unliquidated damages for the breach of the contract came within the purview of the agreement to assume "accounts payable."

If the surrounding circumstances may be referred to, it would seem that the primary purpose for creating the Sales Corporation was the transfer of assets to it by the Lumber Company as an inducement to bank creditors to extend the time of payment of their loans and to make new loans. The banks were unwilling further to finance the concern unless sufficient unincumbered assets were segregated and turned over to the Sales Company to furnish satisfactory security for the loans. It can not be assumed that it was the intent that the new company should assume unknown claims in the nature of unliquidated damages. Such claims were not reflected in the books of the old company. The old company was to retain too a part of its own obligations together with assets thought to be ample with which to pay them.

Counsel make reference to that portion of the provision of the contract which enumerated the claims which the Sales Company did not assume. But there is nothing in the language of the exceptions which warrants such a construction of the words "accounts payable" as would broaden them to include appellant's claim for unliquidated damages. Employers' Liability Assur. Corporation v. Morrow, 6 Cir., 143 F. 750.

The order appealed from is therefore affirmed.