**CALL OF HOUSTON, INC., Appellant,**

v.

**Robert E. MULVEY, Appellee.**

**No. 13602.**

Court of Civil Appeals of Texas.
Houston.

Feb. 9, 1961.

Rehearing Denied March 2, 1961.

---

Franklin R. Navarro, B. Rice Aston, Houston, for appellant.

William G. Fox, Beaumont, for appellee.

COLEMAN, Justice.

Robert E. Mulvey, appellee herein brought suit against Call of Houston, Inc.,

appellant, for breach of an employment contract. Appellant filed a cross-action for negligence in performance of employment. The trial was to a jury. Judgment was for plaintiff, from which appeal was duly perfected to this Court.

On August 1, 1956, appellant, the owner and operator of a radio broadcasting company known as KCOH, entered into a written contract with appellee by which it employed him to act as commercial manager of said company for a compensation of $150 per week plus certain commissions. The contract contained no termination date, but provided as follows:

"The above agreement between the Call of Houston, Inc. (KCOH) and Robert E. Mulvey, becomes effective August 1, 1956 with a termination of contract to be given by either party on a written (90) ninety day notice. In the event both parties desire a shorter notice this will have to be done by mutual consent."

Shortly before March 14, 1957, appellant became dissatisfied with appellee's work as commercial manager of the station. After the parties had conferred over a period of days concerning the possibility that appellee would remain in appellant's employ as a salesman, the parties determined that they would be unable to reach an agreement and each requested the other to set a date for the termination of the contract. On March 14, 1957, appellant wrote a memorandum to appellee, which appears to have reached appellee some days afterward, reading as follows:

"To Bob Mulvey

"Reference to

"Date March 14, 1957

"This is formal notice termination of employment at KCOH as of this date March 14th in accordance with contractural agreement. Exact termination date will be determined as we discussed upon your securing another position. However because jobs are plentiful I think a termination should be within a 30 day period. The purpose of this formal notice is to have record of starting date of termination.

"Radio Station KCOH

"/s/ R. C. Meeker,

"Robert C. Meeker,

"President."

Appellee continued to work for approximately one month, confining his duties to that of salesman. On April 13, 1957 appellee was presented a check in the amount of $90.36, the amount of weekly salary due him less deductible income tax, etc., on which was noted the words "Account in Full." On the same date another check dated April 13, in the amount of $20.85 was given to appellee in payment of automobile expenses, which also bore on the back notation "Account in Full." Appellee testified that he noticed the notations but that he considered that they referred to payment of the account in full for the time which he had actually worked. After receipt of these checks, appellee no longer reported for work, and, after cashing the checks, wrote appellant a letter in which he stated that he intended to hold appellant to the ninety-day notice provision of the contract.

The court's charge as submitted to the jury contained only one issue pertinent to the assigned points of error, which reads as follows:

"Special Issue No. 1—

"Do you find from a preponderance of the evidence that on or about the 14th day of March, 1957, the Plaintiff, Robert E. Mulvey, and the Defendant, Call of Houston, Inc., mutually agreed to waive the provision in Plaintiff's contract of employment calling for a 90 day notice of termination and to substitute therefor an agreement to terminate upon 30 days notice?"

to which the jury answered: "We do not."

Appellant did not object to the charge of the court, but did request certain special

issues, which were refused by the trial court.

Appellant first complains of the action of the trial court in refusing his motion for instructed verdict in which he alleged that the uncontroverted evidence established his defense of accord and satisfaction. 1 Tex.Jur.2d, Accord and Satisfaction, § 1, pp. 207, 208, defines "Accord and Satisfaction" as follows:

"An accord and satisfaction may be defined as a method of discharging a contract or settling a cause of action, arising from either a contract or a tort, by substituting an agreement for the satisfaction thereof and the execution of such substituted agreement. An accord is an agreement whereby one of the parties undertakes to give or perform, and the other to accept, in satisfaction of a claim, liquidated or in dispute, and arising either from contract or tort, something other than or different from what the claimant is, or considers himself, entitled to. A satisfaction is the execution or performance of such an agreement."

The same authority (1 Tex.Jur.2d, Accord and Satisfaction, § 6, p. 212) states:

"Mutual assent of the parties is an indispensable element of an accord and satisfaction. In other words, it is essential that what is given be offered in satisfaction and extinguishment of the original demand, and that it be so accepted."

It has also been held that the parties must intend and the creditor must fully understand that the amount tendered is conditioned as full settlement.[1] McCarty v. Humphrey, Tex.Com.App., 261 S.W. 1015; Daugherty v. Herndon, 27 Tex.Civ.App. 175, 65 S.W. 891, error ref.; Shannon v. Hay, Tex.Civ.App., 153 S.W. 360, error ref. It has also been held that if the creditor is to be held to have surrendered his claim against the debtor, it must be shown that he understood or should have understood that he was doing so when he received the consideration claimed therefor.[1] Bergman Produce Co. v. Brown, Tex.Civ.App., 172 S.W. 554; Early-Foster Co. v. W. F. Klump & Co., Tex.Civ.App., 229 S.W. 1015.

Here the contention is that an accord and satisfaction resulted as a matter of law at the time the checks bearing the notation "Account in Full" were tendered to appellee and accepted by him. Viewing the situation as it appeared at that time, appellant was of the opinion that there had been an agreement to cancel the contract at the end of thirty days, and that he was paying appellee all the money that he owed him under the terms of the contract. Appellee, on the other hand, was of the opinion that the contract was being terminated by the unilateral action of appellant and that he was entitled to continue working under the terms of the contract for an additional sixty-day period. Appellee contends that he understood the notation on the back of the check to mean payment in full for the work actually performed at that time, and so testified on the trial of the case. This contention is given added credence by reason of the fact that the words "Account in Full" have no readily ascertainable and generally accepted meaning applicable to all situations. In Black's Law Dictionary the word "account" is defined as "a detailed statement of the mutual demand in the nature of debt and credit between parties, arising out of contracts or some fiduciary relation," citing Portsmouth v. Donaldson, 32 Pa. 202, 72 Am.Dec. 782, and further defines the term as follows:

"An 'account' is defined as a statement of pecuniary transactions; a record or course of business dealings between parties; a list or statement of monetary transactions, such as payments, losses, sales, debits, credits, etc., in most cases showing a balance or result of comparison between items of an opposite nature; and is not held to

1. 1 Tex.Jur.2d, Accord and Satisfaction, § 6, p. 212, Note 8.

include a liability for unliquidated damages resulting from the breach of an entire contract, expressing only an entire consideration", citing Harnischfeger Sales Corp. v. Pickering Lumber Co., 8 Cir., 97 F.2d 692.

Webster's New Collegiate Dictionary defines the word "account" as "a reckoning; computation. 2. A record or reckoning of debit and credit, esp. in money, usually with a balance; as: a balanced statement of receipts and expenditures of a given period; the series of items under one heading in a company's ledger; a reckoning of charged purchases and credits rendered periodically."

In Humble Oil & Refining Co. v. Southwestern Bell Telephone Co., Tex.Civ.App., 2 S.W.2d 488, 490, the following statement appears:

"* * * an account between parties contemplates and presupposes a contract, express or implied, under the terms of which a party has sold and delivered chattels to another in consideration of his express or implied promise and agreement to pay therefor, as distinguished from damages founded on a tort which one party may suffer by reason of the negligent acts and conduct of another party whereby he has been deprived of the value of his property."

In Dodson v. Kemper Military School, Tex.Civ.App., 42 S.W.2d 288, 290, this statement appears:

"'An "account" has been defined to be "a detailed statement of the mutual demands in the nature of debt and credit between parties, arising out of contracts or some fiduciary relation."'

McCamant v. Batsell, 59 Tex. 363, 367."

It appears from the citation of authorities that the meaning of the word "account" does not usually include a liability for unliquidated damages resulting from the breach of an entire contract, Harnisch-feger Sales Corp. v. Pickering Lumber Co., 8 Cir., 97 F.2d 692, 695, although it has been held that the word may refer either to past or future indebtedness. Semel v. Braun, 94 Misc. 238, 157 N.Y.S. 907.

We think the fact that there was, or might have been, a misunderstanding on the part of appellee as to whether or not the word "account" referred to the past dealings of the parties only, or whether it was intended also to include future liabilities that might arise under the contract, presented an issue of fact, which on proper request should have been submitted to the jury. This fact situation distinguishes this case from the case of Root & Fehl v. Murray Tool Co., Tex.Com.App., 26 S.W.2d 189, 191, 75 A.L.R. 902, relied upon by appellant, which was a suit upon a verified account defended on the ground of accord and satisfaction. In that case the defendants testified directly and positively that the check was tendered and accepted by defendant-in-error with the distinct understanding that it was in full settlement of the disputed account. The plaintiff, who accepted the check with the notation thereon that it was in full payment of the account, and that its endorsement by defendant-in-error would constitute a receipt for the full amount thereof, testified that at the time he accepted the check he stated to plaintiffs-in-error that he would not accept it as full payment, but he does not attempt to say that plaintiffs-in-error assented to this proposition. While defendant-in-error testified that the endorsement was not called to his attention at the time he took the check, the jury found that he knew of the notation at the time he accepted and cashed the check. The court held "it is the settled law of this state that, when an account is made the subject of a bona fide dispute between the parties as to its correctness, and the debtor tenders his check to the creditor upon condition that it be accepted in full payment, the creditor must either refuse to receive the check or accept the same burdened by its attached condition."

This case is distinguishable by reason of the fact that the recital on the check was so clear and plain that it could not have been misunderstood, and therefore no issue was presented for the jury.

The doctrine under which a debt may be discharged by acceptance of a check in a smaller amount requires that the check be tendered on the condition that its acceptance will be in full satisfaction of the debt. This condition may be expressed or inferred from circumstances and the debtor's conduct clearly indicating that acceptance of the check is to discharge the entire debt. 1 Tex.Jur.2d, Accord and Satisfaction, § 34, p. 234. Here it is not beyond dispute that the check was so tendered. On proper request issues should have been submitted to the jury inquiring whether or not the check was tendered on condition that its acceptance operate as a release of the unliquidated claim for damages for breach of contract, and also whether or not appellee accepted the check knowing, or under conditions from which he should have known, that it was so tendered. Since the evidence raises issues of fact, no error is presented by the Court's refusal to sustain appellant's motion for instructed verdict.

Appellant also complains that the trial court erred in refusing appellant's requested Special Issues Nos. 4 and 6, reading as follows:

"Defendant's Requested Special Issue No. 4

"Do you find from a preponderance of the evidence that there existed between Robert E. Mulvey and Call of Houston, Inc., prior to March 14, 1957, a controversy in good faith as to the amounts actually due to Robert E. Mulvey from Call of Houston, Inc.?

\*  \*  \*  \*  \*  \*

"Defendant's Requested Special Issue No. 6.

"Do you find from a preponderance of the evidence that the check dated April 12, 1957, in the amount of $80.25, and the check dated April 13, 1957, in the amount of $90.36, both of which are marked 'Account in Full', both of which were delivered by Call of Houston, Inc., to Robert E. Mulvey, constituted full and final payment of all moneys due to Robert E. Mulvey by Call of Houston, Inc., and constituted an acceptance by Robert E. Mulvey of said checks in full satisfaction of any claim sued upon in this cause?"

Rule 279, Vernon's Annotated Texas Rules of Civil Procedure provides in part:

"Failure to submit an issue shall not be deemed a ground for reversal of the judgment, unless its submission, in substantially, correct wording, has been requested in writing and tendered by the party complaining of the judgment; \*  \*  \*."

Requested Special Issue No. 4 was not a proper issue because there is no evidence that prior to March 14, 1957 appellee contended that he was due more money than was paid him and the only controversy that had arisen was as to whether or not Robert E. Mulvey had a right to continue working for an additional sixty days under the terms of the contract. This issue was submitted. Furthermore, the issue requested would have been subject to an objection that it was duplicitous in that it inquired as to whether or not there was a controversy over money (assuming that the word "amounts" referred to money) prior to March 14, 1957, and also inquired as to whether or not such controversy was in good faith, which in a proper case is a necessary issue. Moreover, the error in refusing the issue, if we are incorrect in our holding above, is harmless under Rule 434, Vernon's Annotated Texas Rules of Civil Procedure, because an affirmative answer by the jury would not have authorized a different judgment.

Issue No. 6 is subject to the objection that it is duplicitous in that it in-

quires as to whether or not the checks were submitted by Call of Houston, Inc. as full and final payment, and also whether it was accepted by Robert E. Mulvey in full satisfaction of the claim. Failure to submit a special issue which is duplicitous is not error. Uptmor v. Janes, Tex.Civ.App., 210 S.W.2d 235, error ref. n. r. e. Under Rule 279, an issue, definition or instruction must be tendered in "substantially correct" form. Such requirement does not mean that it must be absolutely correct, nor does it mean that one that is merely sufficient to call the matter to the attention of the trial court will suffice, but rather it means one that in substance and in the main is correct and that is not affirmatively incorrect. Modica v. Howard, Tex.Civ.App. 1942, 161 S.W.2d 1093.

Appellant's Point of Error No. 3 reads as follows:

> "The trial court erred in refusing appellant's requested Special Issues on his cross-action Nos. 3, 4, 5, 6 and 7, because the pleading and proof raised the issue of appellee's negligence and appellant's damages as a proximate result."

We do not consider it necessary to set out in detail the various issues requested. Suffice it to say that no issues were requested inquiring whether or not the acts of appellee complained of amounted to negligence or that such negligence, if any, was a proximate cause of damage to appellant.

Finally, appellant complains that the trial court erred in granting judgment for appellee because the damages were unliquidated and there was no proof as to the correct measure of the damages and the judgment of $1,235.83 was unsupported by the evidence. Appellant did not object to the court's charge on the ground that it failed to contain an issue inquiring as to the damages suffered by appellee. The case came on for trial on the 15th day of April, 1959, long after the expiration of the ninety-day period in question. The

jury found on sufficient evidence that there was no agreement to shorten the period of notice required by the contract of employment. Appellant admits in his brief that the letter of March 14, 1957 set up a termination date of thirty days and that appellee stayed on as salesman until he left on April 13 or 14. By the terms of the contract appellee's salary was $150 per week, which would be $21.43 per day. Sixty days' salary, therefore, would amount to $1,235.-83, the amount of the judgment. While appellee could have been required to minimize his damages, there is no pleading, nor proof, that he worked or could have obtained work during the sixty-day period. This burden is on appellant. Hoffer Oil Corporation v. Hughes, Tex.Civ.App., 48 S.W.2d 426, error dism.; Annotations, 134 A.L.R., pp. 242–286.

Affirmed.