Robert M. VANN et al., Appellants,

v.

WESTERN DATA CENTERS, INC., Appellee.

No. 8636.

Court of Civil Appeals of Texas, Amarillo.

Jan. 20, 1976.

Kolander, Templeton & Hamilton (R. C. Hamilton), Amarillo, for appellants.

Gibson, Ochsner, Adkins, Harlan & Hankins (W. P. Sturdivant), Amarillo, for appellee.

REYNOLDS, Justice.

Plaintiffs appeal from a take-nothing judgment rendered in their suit to recover the balance claimed due for the sale of their shares of stock to their former corporate employer. The evidence supports the trial court's findings of accord and satisfaction in a bona fide dispute and a full release of plaintiffs' claims. Affirmed.

Western Data Centers, Inc., initiated an employee stock purchase plan, administered by its board of directors, to encourage stock ownership by its employees in, and to furnish them an incentive to remain with, the corporation. The plan specified that until there is a public market for the stock, the shares could be resold only to Western and that the shares must be sold if the employee-owner left the corporation. The sole

provision in the plan bearing on Western's repurchase price of the shares reads:

Without restricting . . . the Board of Directors in what other provisions may be required, they may require:

(1) That until the Board of Directors determines that a public market for the Common Stock has been established, the Corporation will repurchase from any employees any Common Stock purchased by him pursuant to this Plan up to a total limit for all of such purchases of $5,000 in any one year at a price per share equal to two times the current book value (as defined in 5(b) above) of such Common Stock at the time of repurchase or the amount per share for which such employee paid for such Common Stock, whichever is greater.

During meetings called to explain the plan to the employees, Western's president, Carter Kelly, orally stated, and circulated his prepared written summary of the plan reciting, that Western would repurchase the stock at two times the current book value or cost, whichever was greater. Employees, among whom were the five plaintiffs—Robert M. Vann, James H. Fredericks, Clement G. Pond, Jr., George T. Rowley, Jr., and Ronnie D. Upton, who believed and relied on Kelly's representations—purchased shares of Western's stock. Afterwards, some employees resold their shares to Western and received two times the book value for them.

A public market never was established for the stock, and the board of directors took no action to affirmatively require that the shares be repurchased at the price the plan provided they may set. When the repurchase representations made by Kelly came to the board's attention, the board met and authorized Kelly to offer to repurchase the shares at cost plus fifteen (15%) percent, plus one (1%) percent per month for each month the shares were held. If accepted, the offer required the selling employee to sign the release imprinted on Western's check issued in payment of the shares reading:

By accepting payment of this check, the undersigned does hereby release WESTERN DATA CENTERS, INC. ("WESTERN"), its officers and directors from any further claims and demands whatsoever, in law or in equity, which the undersigned, his heirs, executors, administrators, assigns or beneficiaries have or might have against WESTERN, its officers and directors under the terms of the Employee Stock Purchase Plan of WESTERN, any interpretation or summary of such Plan or by reason of the purchase or sale of any of the stock of WESTERN acquired under such Plan, it being intended to hereby sell to WESTERN all of the stock of WESTERN owned by the undersigned and to hereby release WESTERN, its officers and directors from any and all claims of any kind or character whatsoever which may have arisen by reason of the purchase or sale of such shares of stock by the undersigned.

Alternatively, the board authorized Kelly to offer to each employee rejecting the repurchase offer a $100 consideration to sign an agreement certifying that the employee understood nothing in the plan requires Western to repurchase the shares of stock at any time.

In a meeting with the employees, Kelly, with house counsel present, stated that he had misunderstood the plan and had made his representations of the repurchase price without the approval of the board of directors. The offers authorized by the board were explained. Questions asked by the employees were responded to by Kelly and Western's counsel. Plaintiff Upton, testifying for all plaintiffs, stated that after the presentation he did not agree with the board's view of the plan, he disputed the board's contention, and he still was of the opinion that he was entitled to two times the current book value for his shares of stock. However, after consulting counsel of their choice and being advised that the

required release was invalid, each plaintiff surrendered his stock, received Western's check in the amount of the offer, endorsed the check which also constituted signing the release, and received payment on the check.

Subsequently, the five plaintiffs left the employment of Western and instituted this suit. The recovery each sought was the difference between the amount he received for his shares of stock and the amount of two times their book value on the date of sale, plus interest. After a non-jury trial, the trial court rendered judgment decreeing that plaintiffs take nothing.

■ The court made and filed findings of fact and conclusions of law. Summarized, the fundamental findings are that at the time each plaintiff accepted and endorsed his check containing the release, (1) there existed a bona fide dispute between each plaintiff and Western as to Western's liability to repurchase the stock at a price of two times the current book value or cost, whichever was greater; (2) each plaintiff was unmistakably told and knew the amount Western tendered was conditioned on its acceptance as full satisfaction of the entire amount claimed; and (3) acceptance constituted a full release from any further claims in law and in equity. These findings bar plaintiffs' claims and, being supported by the evidence of probative force favorable to the findings, must be upheld. See *Brown v. Frontier Theatres, Inc.,* 369 S.W.2d 299 (Tex.1963).

Notwithstanding and without directly challenging the evidential support for these findings of fact, plaintiffs contend that, contrary to another of the court's factual findings, until a public market was established in the stock, Western was required by the plan to repurchase their shares at two times the current book value and, therefore as a matter of law, there could be no consideration for the release. Plaintiffs advance the principle, held applicable to the records made in the cases cited by plaintiffs, that payment of the amount of a liquidated claim or an amount admittedly due is not consideration for a release of the residue demanded. But that is not the nature of the record made in the proceedings we review and, under this record, plaintiffs' points of error must be overruled.

In the case at bar, the court found that at the time of the transaction a bona fide dispute existed as to the extent of Western's liability under the plan. Developed before the court were plaintiffs' pre-transaction claim, and Western's denial, that the terms of the plan and its operation, particularly with regard for the repurchase representations made by Western's president, obligated Western to repurchase their shares of stock at two times current book value. In making its offer to repurchase, Western assumed the position that neither the plan nor the administering board of directors had set the price plaintiffs claimed, and that the president's representations were neither authorized by nor binding on the board. Plaintiffs' recognition that there was a dispute is confirmed by plaintiff Upton's testimony.

That a good faith dispute as to liability on either a liquidated or an unliquidated demand furnishes sufficient consideration for an accord and satisfaction is no longer open to question. See *Industrial Life Insurance Company v. Finley,* 382 S.W.2d 100 (Tex.1964). Hence, whatever may have been Western's liability under the plan, and it is unnecessary that we decide, the bona fide dispute made it immaterial whether plaintiffs were, as they contend, or were not, as Western asserts, entitled to receive two times the current book value for their shares of stock.

Thus, when Western explained its position and offered its check with the release affixed in full satisfaction for the surrendered shares, each plaintiff knew Western was disputing his claim and was making an unequivocal offer of a lesser amount in full and final settlement of the claim. Plaintiffs had three choices: accept Western's repurchase offer; or reject it and accept Western's alternative offer; or reject both offers and press their demands for the full

amounts claimed to be due from Western. Plaintiffs chose the first course and, when they accepted the checks as tendered and executed the releases, they accepted the terms of the repurchase offer unaffected by their belief that the release was not valid to foreclose their claims for additional sums. The consequence, pursuant to the applicable principles enunciated in *Industrial Life Insurance Company v. Finley,* supra, is an accord and satisfaction fully releasing Western from plaintiffs' claims, and the evidence justified the trial court in so finding.

The judgment is affirmed.