**Chris BOHMFALK, Appellant,**

**v.**

**Algie LINWOOD, Appellee.**

**No. 05–86–00485–CV.**

Court of Appeals of Texas, Dallas.

Dec. 15, 1987.

David E. Moseley, Jr., Laura Worsham, Dallas, for appellant.

Don Black, Dallas, for appellee.

Before HOWELL, McCLUNG and McGRAW, JJ.

HOWELL, Justice.

Plaintiff, Algie Linwood (Holder), sued defendant, Chris Bohmfalk (Maker), for payment of a $2,980 check upon which Maker had stopped payment. Maker contended that Holder won the check in a gambling transaction and, therefore, was not a holder in due course. After a non-jury trial, the court concluded that Holder did not win the check in a gambling transaction, and gave judgment for Holder. In one of Maker's points of error, Maker contends that the trial court erred in excluding the deposition testimony of one of Maker's witnesses. We agree, and reverse the trial court's judgment.

Maker hired James Elliot ("Payee") to perform concrete work on the driveway at his home, and paid by check to the order of Payee. Payee carried the check to the proximity of a liquor store operated by Holder, where, in connection with a disputed transaction, Payee endorsed and delivered the instrument to Holder.

Payee's testimony was that he never went into the liquor store; instead, he went out behind the store where gambling frequently occurred. Two other people were behind the store, but Holder came out and made them leave. Holder and Payee then started shooting dice. Payee testified that at that time, he had with him $1,000 cash and the $2,980 check from Maker. Payee stated that he had not cashed the check. He lost the $1,000 cash to Holder, and then started gambling against the check. When he eventually lost the amount of the check, he endorsed the check to Holder.

Holder's evidence differed considerably. Holder's daughter testified that she was working in the liquor store when Payee came in and requested that she cash the check. She told him that it would be necessary for him to take it to the bank. However, Holder spoke up, told his daughter that he knew Payee, and instructed her to cash the instrument. The daughter testified that Payee endorsed and delivered the check and she gave him the cash. This testimony was corroborated by Leon Ross, who testified that he happened to be in the store and observed the transaction. Hold-

er, his daughter, and witness Ross all testified that after he received the cash, Payee went out the back door of the store. Witness Ross stated that he followed Payee and watched him gamble with several other people.

Holder testified that he cashed the check for Payee, and that Payee returned $210 to him as repayment of a loan and then went out the back door of the store. About thirty or thirty-five minutes later, Holder went out the back door to dispose of some boxes and Holder started gambling with Payee and two others. According to Holder, he won between $1,800 and $1,900 from Payee.

Thereafter, Payee called Maker and told him that the check was missing. Maker related that Payee declared to him that the check must have been stolen from his truck. Maker gave Payee another check and stopped payment on the instrument now in suit. Subsequently, when Holder telephoned both Maker and John McCormack, an officer at Maker's bank, and asked if the check was good, both advised him that payment had been stopped.

■■■ At trial, Maker offered the deposition testimony of banker McCormack. The banker's deposition, before this court by bill of exception, was that Holder telephoned him at the bank, told him that he had won the check in a crap game, and asked if the check was "any good." Holder objected to the admission of the deposition; the trial court sustained the objection and excluded the deposition. The grounds relied upon by the court are somewhat obscure. However, the only definitive grounds suggested by the record or the briefs is that Maker did not give sufficient advance notice that the deposition was to be taken. We hold that the deposition was erroneously excluded.

Neither Holder nor his attorney attended the deposition. In his brief to this court, counsel explains his failure to attend by stating that he had "four days notice of the deposition and had a prior commitment scheduled at that time." This occurred several weeks prior to the time of trial. Before the deposition was taken, Holder did not apply to the court for a protective order requiring that the taking of the deposition be rescheduled. He made no showing, either at the trial or at any time before, why he was unable to obtain relief from the deposition notice *before* the deposition occurred. After the deposition was taken, Holder did not, at any time prior to the trial, ask that the deposition be resumed so that he, Holder, could cross-examine the witness. Under these circumstances, Holder clearly waived any objections that he might have had, grounded upon the proposition that he was given insufficient time to respond to the notice. A party who desires to take a deposition must give "reasonable notice" to the opposing party. TEX.R.CIV.P. 200(2)(a). Inasmuch as the deposition was being taken several weeks prior to trial, four days advance notice was, perhaps, somewhat scant. However, it was not unreasonable *per se*. Upon receipt of the notice, Holder, if he had a scheduling conflict or if he simply considered the notice inadequate, had a duty to protest both to opposing counsel and to the court as soon as possible. He had to make his protest before the deposition was ever taken; failing that, he was burdened to show that it was not feasible for him to do so. To allow the respondent to a deposition notice to save his objection until a later day would be most disruptive to the smooth functioning of the law.

We grant that under the current version of rule 200, the party seeking to take a deposition is given the right to select the time and place of taking, and that the face of the rule sets no definitive standards or limitations whatsoever. However, discovery sanctions are available against those who abuse the rule, such as by giving overnight notice of the taking of a deposition in some other part of the country with no ostensible need for such haste. With respect to the case in hand, it bears no hallmarks of an attempt to harass the opposition through shortness of notice. We hold that Holder's right to object to the deposition notice on a ground of insufficiency of advance notice was waived.

TEX.R.CIV.P. 207(3). The trial court erred in excluding the deposition.

■ Having held that the court below erred in excluding the deposition, we must further determine if the error was reversible. In doing so, we must review the record as a whole and determine that the error was such a denial of the defendant's rights as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *Gonzalez v. Texas Dep't of Human Resources*, 581 S.W.2d 522, 532 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.), *cert. denied*, 445 U.S. 904, 100 S.Ct. 1079, 63 L.Ed.2d 319 (1980); TEX.R.APP.P. 81(b).

■ It has been variously stated that any error in excluding evidence is harmless if the evidence be "merely cumulative." However, the fact that another witness may have given the same or substantially the same testimony is not the decisive factor. The decisive factor is whether the excluded testimony would have added substantial weight to the complainant's case. If so, it is error, and quite possibly harmful error, to exclude the testimony. The test has been well expressed in the rules of evidence:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by ... [the consideration against] *needless* presentation of cumulative evidence.

TEX.R.EVID. 403 (emphasis added).

The excluded deposition did not *merely* repeat the testimony of prior witnesses without adding substantial weight thereto. Three persons, Holder, Holder's daughter, and an apparent bystander, had appeared to testify that this check was cashed in the normal course of business. Maker was not present and he had been able to produce only one witness, his own payee, to testify to the contrary. Payee could hardly be described as a neutral or disinterested witness; he had an obvious liability to Maker by reason of the duplicate payment which he, Payee, had secured from Maker. Further, Payee's credibility had been impaired by the fact that he gave to Maker a false story concerning the disappearance of the check. In the face of three witnesses giving diametrically opposite testimony, Maker's case, insofar as it rested on the testimony of Payee alone, possessed considerable weakness.

On the other hand, banker McCormack was an apparently neutral and detached witness. There is no suggestion of a reason why he might have been inclined to color his testimony. His testimony was clear and direct. Although he was not cross-examined, there was little to suggest that he might have been mistaken. He testified to a direct admission by Holder that he, Holder, had won the check in a crap game. The admission, if believed by the trier of fact, would have destroyed Holder's case. Even though Payee had already testified that he lost the check by gambling, we cannot dismiss Banker's deposition testimony as "merely cumulative" or as "needless presentation of cumulative evidence."

■ As evidence, admissions by a party are a two-pronged assault on the admitter's case. As a true exception to the hearsay rule they prove the truth of the facts admitted. And since by definition they are inconsistent with the admitter's testimony at trial, they tend to impeach his credibility. *Hartford Accident & Indemnity Co. v. McCardell*, 369 S.W.2d 331, 337 (Tex.1963). It follows that there were two independent grounds for the admission of Banker's deposition and that the exclusion thereof was doubly harmful.

This decision does not conflict with the court's prior holding in *Delaporte v. Preston Square, Inc.*, 680 S.W.2d 561, 564 (Tex. App.—Dallas 1984, writ ref'd n.r.e.). A townhouse association there sought to force one of its members to remove construction that allegedly violated deed restrictions. The trial court excluded testimony by another owner to the effect that such owner did not consider the construction to be violative of the architectural scheme. With scant discussion, this court affirmed, holding the error, if any, to be harmless.

In this respect, ... [defendant owner] was allowed to adduce other testimony to the effect that the wall in question conformed with the architectural scheme.... Thus, ... [the testimony of the other owner] would have been cumulative and *would not likely have caused the jury to answer the special issue* ... [in another manner].

*Id.* (emphasis added). *Delaporte* does not give sufficient facts to thoroughly evaluate the ruling. As applied to the factual situation now before us, we find to the contrary. We refuse to hold that Banker's testimony was not likely to have caused a contrary answer to the crucial question of whether the disputed check was given to Holder in satisfaction of a gambling debt.

At first blush, the case of *Mollinedo v. Texas Employment Commission*, 662 S.W. 2d 732, 739 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.) (unemployment compensation claim, the issue being whether claimant quit her job voluntarily or was forced to quit for reasons of health) appears contrary to our decision. The plaintiff there complained of the trial court's refusal to consider a letter from her doctor indicating that her eyesight made it difficult for her to work. In affirming, the court of appeals stated:

[t]he exclusion of testimony ... is not harmful where the court has previously admitted similar evidence through ... another witness.... [citation omitted.] The letter restates what the appellant had said—that her eye condition caused problems for her on the job. *It does not say why she quit or that she had been advised by her doctor to quit.*

*Id.* (emphasis added). It is to be emphasized that the case was tried and appealed under the "substantial evidence" rule. The *Mollinedo* court was of the opinion that because the doctor did not give a direct opinion *upon the contested issue (state why she quit or state that he advised her to quit),* his letter added *little weight to the evidence,* and plaintiff did not carry the burden of showing a substantial likelihood that the excluded evidence would have produced a different outcome.

Obviously, each case must be separately analyzed to determine if the exclusion of evidence produced harm to the complainant. We are in substantial agreement with the test as stated in *Delaporte* and *Mollinedo.* The complainant must show a reasonable probability that the outcome would have been different had the testimony been allowed. Whether the excluded testimony was cumulative or repetitious constitutes but one facet of that test. At the same time, an appellate court is not the ultimate trier of fact. The facts must be decided by the designated finder of fact, be it judge or jury. The appellate court only weighs probabilities. If a significant probability exists that the typical trier of fact might well have decided the disputed fact issue in a different manner had the excluded testimony been admitted, the appellant will have satisfied his burden of showing harm and, therefore, reversible error.

In the case before us, it cannot be argued but that the excluded testimony of Banker would have added considerable weight to Maker's case. His chances of prevailing upon the disputed issue of whether the check was endorsed to Holder as part of a gambling transaction would have been enhanced substantially through presentation of Banker's testimony that Holder admitted having won the check in a crap game. We hold that Maker has satisfied his burden of showing that the error was such a denial of his rights as was reasonably calculated to cause and probably did cause the rendition of an improper judgment.

REVERSED and REMANDED.