**HYCARBEX, INC.; Moin Hussain and S.K. Bhattacharjee, Individually, Appellants,**

**v.**

**ANGLO–SUISSE, INC. and Anglo–Suisse (Pakistan), Appellees.**

**No. 14–94–00728–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

June 6, 1996.

---

N.J. 'Jim' Farrell, David F. Beale, Houston, for appellants.

Joe M. Kirkham, Franklin Holcomb, Houston, for appellees.

Before LEE, HUDSON and O'NEILL, JJ.

## OPINION

LEE, Justice.

Appellants, Hycarbex, Inc. ("Hycarbex"), Moin Hussain ("Hussain"), and Kumar Bhattacharjee ("Kumar") sued appellees, Anglo–Suisse, Inc. and Anglo–Suisse Pakistan (collectively referred to as "Anglo–Suisse"), for breach of an agreement to pay commissions.[1] At the close of Hycarbex's evidence, Anglo–Suisse moved for directed verdict on the following grounds: (1) Hycarbex failed to prove that Anglo–Suisse breached the agreement by failing to pay all the commissions owed; and (2) Anglo–Suisse proved accord and satisfaction as a matter of law. During Anglo–Suisse's case-in-chief, the court granted Anglo–Suisse's motion but did not state the basis for its ruling in the final judgment. Raising five points of error, Hycarbex appeals from that judgment. We find the directed verdict was proper and affirm the trial court's judgment.

In August 1984, Gilles Labbe formed Anglo–Suisse as an oil exploration and development company. In April 1985, Anglo–Suisse hired Hycarbex to apply to the Pakistan government on behalf of Anglo–Suisse for an oil concession located in southeast Pakistan. The one-thousand acre oil concession is known as the "Thatta concession." Hycarbex's president and sole shareholder, Moin Hussain, enlisted his colleague, Kumar, to help with the application. Labbe knew Hussain and Kumar when they were all previously employed with the same oil company. Hycarbex subsequently filed the application on Anglo–Suisse's behalf and participated in negotiations with the Pakistan government. For Hycarbex's efforts, Anglo–Suisse agreed, by letter dated April 10, 1985, to pay Hycarbex a commission based on **"ten percent (10%) of the net cash received by Anglo–Suisse from third parties at the time Anglo Suisse sells a working interest in the concession."**

In June 1985, Labbe formed another related company to operate the concession. While the application was pending, Anglo–Suisse sought partners in the oil industry to provide the substantial capital needed to operate the Thatta concession. Although it did not participate in Anglo–Suisse's negotiations with prospective partners, Hycarbex helped obtain the data used to prepare the geological and engineering package for the Thatta concession and attended some of the early presentations to prospective partners. In the fall of 1985, Anglo–Suisse unsuccessfully attempted to sell its entire working interest to Amoco for $2 million plus costs. At the time, Labbe told Hussain about the deal, which, according to Labbe, would have paid Hycarbex a $200,000 commission. By September 1986, Anglo–Suisse finally acquired a 95% working interest in the concession and the government-owned oil company retained a 5% working interest.

In early 1987, Anglo–Suisse sold 75% of its working interest to Phillips Petroleum Co. ("Phillips") and International Finance Corporation ("IFC"), a division of the World Bank.

---

1. Hussain and Kumar asserted claims below only as third-party beneficiaries to the contract at issue. However, at a pre-trial hearing, the trial court struck these claims from Plaintiffs' Second Amended Petition. Although parties to this appeal, Hussain and Kumar do not complain about his ruling. Thus, this appeal involves only the contract dispute between Hycarbex and Anglo–Suisse.

In return, Phillips/IFC paid Anglo Suisse $1,447,890 and agreed to pay certain future costs of seismic work and drilling operations. However, at the time of the sale, Anglo–Suisse's costs were approximately $1.7 million as reflected in a "Statement of Concession Costs" prepared by the accounting firm of Ernst & Whinney and Anglo–Suisse's audited financial statements. Because Anglo–Suisse's costs exceeded its gross cash from the sale, Labbe told Hussain "the company was in deficit" and Anglo–Suisse "owed nothing under his commission." However, Labbe offered to pay Hussain $50,000 as a "goodwill gesture." Hussain expected more because of the failed Amoco deal and when he protested, Labbe offered an additional $10,000. The $60,000 was paid to Hycarbex in two $30,000 installments. The first installment was enclosed in a January 22, 1987, letter from Labbe to Hussain. The letter states:

Re: Our Agreement of April 10, 1985

Dear Moin:

Enclosed is our check no. 1111 in the amount of $30,000 which represents 50% of the **settlement for the commission owed to Hycarbex regarding the Thatta Concession.** We anticipate settling the remaining $30,000 payment prior to the end of March 1987.

Please acknowledge by signing a duplicate original of this letter as your receipt of the 50% and your agreement that **these payments shall constitute complete fulfillment of our obligation to Hycarbex.**

The letter is signed by Labbe, as president of Anglo–Suisse. At the bottom is the legend: "Accepted and agreed to this 23rd day of January, 1987," and a signature line containing Hussain's signature. A notation on the check states: "one half of 10% commission as per Agrmt. of 4/10/85." In March 1987, Hussain received the second $30,000 check in the mail. The check contains the notation: "Balance due as per letter agreement of 4/10/85."

A year after Hycarbex received the second check, Hycarbex's attorney sent Anglo–Suisse a letter demanding "a full accounting" of the amounts owed under the April 10, 1985, agreement and threatening legal action. Nine months after that, Anglo–Suisse sold its remaining 20% working interest to Union Pacific for $4.1 million. The parties agree that Anglo–Suisse did not pay Hycarbex a commission on this sale but disagree on whether a commission was owed.

In April 1989, Hycarbex filed suit against Anglo–Suisse alleging contract and tort causes of action based on Anglo–Suisse's alleged failure to pay commissions. Anglo–Suisse counterclaimed for damages, including "costs, fees, and expenses ... due to plaintiffs' repudiation of the January 22, 1987 agreement...." The trial court granted summary judgment on Hycarbex's breach of fiduciary duty claim and Hycarbex abandoned its remaining tort claims. Thus, the case was tried solely on Hycarbex's contract claim. At trial, the parties disputed whether the April 10, 1985, agreement required Anglo–Suisse to pay Hycarbex a commission on each sale of a working interest or on a single sale of a working interest. The parties also disputed whether the January 22, 1987, agreement and Hycarbex's receipt of the two checks constituted an accord and satisfaction of Anglo–Suisse's obligation under the April 10, 1985, agreement. The trial court's final judgment ordered that Hycarbex "take nothing" and dismissed Anglo–Suisse's counterclaim without prejudice.

■■■■ By its points of error, Hycarbex contends the directed verdict was improper. Generally, in reviewing the trial court's granting of a directed verdict, an appellate court must consider the evidence in the light most favorable to the party against whom the verdict was directed, disregarding all contrary evidence and inferences. *Qantel Business Sys. v. Custom Controls Co.,* 761 S.W.2d 302, 303 (Tex.1988); *White v. Southwestern Bell. Tel. Co.,* 651 S.W.2d 260, 262 (Tex.1983); *Jones v. Tarrant Util. Co.,* 638 S.W.2d 862, 865 (Tex.1983); *Collora v. Navarro,* 574 S.W.2d 65, 68 (Tex.1978). If there is any conflicting evidence of probative value which raises a material fact issue, then the judgment must be reversed and the case remanded for the jury's determination of that issue. *Id.* On the other hand, when no evidence of probative force on an ultimate element exists or when the probative force or slight testimony is so weak that only a mere surmise or

suspicion is raised as to the existence of essential facts, the directed verdict must be affirmed. *See University Nat'l Bank v. Ernst & Whinney,* 773 S.W.2d 707, 709 (Tex. App.—San Antonio 1989, no writ).

■ Although Anglo–Suisse moved for a directed verdict on two grounds, the trial court's judgment does not specify the ground(s) upon which it is based. Therefore, the burden is on Hycarbex to challenge both grounds asserted in Anglo–Suisse's motion. *See McKelvy v. Barber,* 381 S.W.2d 59, 62 (Tex.1964). If either ground is sound, the trial court's judgment must be affirmed. *Id.*

In points of error one and two, Hycarbex contends there is some evidence that Anglo–Suisse breached the agreement according to its unambiguous terms, or alternatively, the agreement is ambiguous and the ambiguity should have been resolved by the jury. In point of error three, Hycarbex contends Anglo–Suisse failed to prove accord and satisfaction as a matter of law. Because accord and satisfaction is an affirmative defense to a breach of contract, we address that issue first. *See* TEX.R.CIV.P. 94; *see also Harris v. Rowe,* 593 S.W.2d 303, 306 (Tex.1979) (holding that an accord and satisfaction constitutes a bar to any action on the original contract).

■ The affirmative defense of accord and satisfaction rests upon a new contract, express or implied, in which the parties agree to the discharge of the existing obligation by means of the lesser payment tendered and accepted. *Jenkins v. Henry C. Beck Co.,* 449 S.W.2d 454, 455 (Tex.1969). The evidence must establish an assent of the parties to an agreement that the amount paid by the debtor to the creditor was in full satisfaction of the entire claim. *Id.* The minds must meet and where resting in implication, the facts proved must irresistibly point to such conclusion. *Id.* There must be an unmistakable communication to the creditor that tender of the lesser sum is upon the condition that acceptance will constitute satisfaction of the underlying obligation. *Id.* The condition must be plain, definite, and certain and the statement accompanying the tender of a sum less than the contract price must be so clear, full, and explicit that it is not susceptible of any other interpretation. *Id.* The offer must be accompanied with acts and declarations which the creditor is bound to understand. *Id.* The burden of proof in establishing accord and satisfaction rests on the party asserting it. *Titlow v. Devine,* 650 S.W.2d 143, 144 (Tex.App.—Houston [14th Dist.] 1983, no writ).

■ In the instant case, the "accord" was not "resting in implication," but was by a written agreement. *See id.* Because an "accord" is in essence a contract or agreement, the rules of construction applicable to contracts apply. *See Harris,* 593 S.W.2d at 306. (applying rules of contract construction to escrow agreement alleged to be an accord). In construing a written contract, the court's primary concern is to ascertain the true intentions of the parties as expressed in the instrument. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983). To achieve this objective, the court must examine and consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless. *Id.* (emphasis in original) No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument. *Id.*

■ The court must keep in mind that the parties to an instrument intend every clause to have some effect or in some measure to evidence their agreement and that a reasonable interpretation of an agreement is preferred to one which is unreasonable. *See Westwind Exploration, Inc. v. Homestate Sav. Ass'n,* 696 S.W.2d 378, 382 (Tex.1985). Language used by the parties to a contract should be accorded its plain grammatical meaning unless it definitely appears that the intentions of the parties would be thereby defeated. *Lyons v. Montgomery,* 701 S.W.2d 641, 643 (Tex.1985). The court must avoid when possible and proper, a construction which is unreasonable, inequitable and oppressive. *Reilly v. Rangers Management, Inc.,* 727 S.W.2d 527, 530 (Tex.1987).

■ Hycarbex contends the January 22, 1987, agreement is not an accord and satis-

faction because: (1) it contemplates only the commission on the Phillips/IFC sale, not future commissions; (2) there was no meeting of the minds regarding future commissions; and (3) there was no consideration to support an accord and satisfaction for future commissions.[2] These contentions are without merit. First, they assume the April 10, 1985, agreement contemplates future commissions by requiring Anglo–Suisse to pay a commission on each sale of a working interest. This issue is disputed. Second, even if the April 10, 1985, can be construed as Hycarbex contends, a plain reading of the parties' January 22, 1987, agreement shows Anglo–Suisse's payment of $60,000 to Hycarbex was for **all commissions** owed under that underlying agreement.

The initial sentence of the January 22, 1987, agreement states the first $30,000 "represents 50% of the settlement for the commission owed to. Hycarbex regarding the Thatta concession," not merely the Phillips/IFC sale. "The commission owed regarding the Thatta concession" is not limited to the Phillips/IFC sale, but refers to the entire commission, thus encompassing any future sales. Any doubt about that interpretation of the January 22, 1987, agreement is resolved by the last sentence, which states explicitly "that these payments shall constitute complete fulfillment of our obligation to Hycarbex." Anglo–Suisse's only obligation to Hycarbex was to pay a commission as specified by the April 10, 1985, agreement. That agreement is referenced in the January 22, 1987, agreement signed by Hussain on behalf of Hycarbex and noted on the two $30,000 checks accepted and negotiated by Hussain. We conclude the $60,000 paid to

Hycarbex was in "**settlement** of the commission owed [on] the Thatta concession" and "**complete fulfillment** of [Anglo–Suisse's] obligation to Hycarbex."

■ Citing a litany of cases, Hycarbex next argues there was no meeting of the minds because Hussain testified he did not understand the agreement to be an accord and satisfaction of his claim for future commissions. Hycarbex is incorrect for two reasons. First, as Anglo–Suisse meticulously points out, the cases cited by Hycarbex either deal with whether there was an "accord" or simply bear little resemblance to the facts of this case.[3] The "accord" cases generally involved merely tendered checks with various notations.[4] Here, there can be no dispute that there was an accord.

As we observed, Hycarbex not only accepted and negotiated two checks for "one-half of the 10% commission" and for the "balance due" under the April 10, 1985 agreement, but signed a separate written agreement expressly acknowledging "that these payments shall constitute complete fulfillment of [Anglo–Suisse's] obligation" under the underlying agreement. *See e.g., Industrial Life Ins. Co. v. Finley,* 382 S.W.2d 100, 106 (Tex.1964) (holding that insurance agent's acceptance and negotiation of check with notation "full payment of all money due" along with his receipt of transmittal letter stating that check was "in full and final settlement for contingent commission" constituted an accord and satisfaction of the agent's claim for any future, contingent commissions that might be owed by the insurance company). In a post-submission brief, Hycarbex argues *Industri-*

**2.** Contrary to Anglo–Suisse's assertion, Hycarbex does not so much argue the January 22, 1987 agreement is ambiguous as it argues the agreement is not an accord and satisfaction of its entire claim for commissions.

**3.** *See e.g., White v. Southwestern Bell Tel. Co.,* 651 S.W.2d 260 (Tex.1983); *Jenkins v. Henry C. Beck Co.,* 449 S.W.2d 454 (Tex.1969); *H.L. "Brownie" Choate v. Southland Drilling Co.,* 447 S.W.2d 676 (Tex.1969); *DeShazo v. Wool Growers Central Storage Co.,* 139 Tex. 143, 162 S.W.2d 401 (Tex. 1942); *Murphy v. McDermott, Inc.,* 807 S.W.2d 606 (Tex.App.—Houston [14th Dist.] 1991, writ denied); *Ives v. Watson,* 521 S.W.2d 930 (Tex. App.—Beaumont 1975, writ ref'd n.r.e.); *Coastal*

*Plains Develop. Corp. v. Tech–Con Corp.,* 531 S.W.2d 143 (Tex.App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.); *Evans Young Wyatt, Inc. v. Hood & Hall Co.,* 517 S.W.2d 313 (Tex.App.—Waco 1974, writ ref'd n.r.e.); *Charlie Thomas Courtesy Ford, Inc. v. Sid Murray Agency,* 517 S.W.2d 869 (Tex.App.—Corpus Christi 1974, writ ref'd n.r.e.); *Eicker v. Snider,* 517 S.W.2d 926 (Tex.App.—Waco 1974, writ ref'd n.r.e.); *Texas Gulf Sulphur Co. v. Gladys City Co.,* 506 S.W.2d 281 (Tex.App.—Beaumont 1974, writ ref'd n.r.e.); *Call of Houston, Inc. v. Mulvey,* 343 S.W.2d 522 (Tex.App.—Houston 1961, no writ).

**4.** See footnote 3.

*al Life* is distinguishable because in that case the letter accompanying the checks expressly referred to "contingent commissions" while in this case the January 22, 1987, agreement does not mention future commissions. However, that omission in the January 22, 1987, agreement is not fatal given the "complete fulfillment" language.

Hycarbex also argues that one of the cases cited in its original brief, *Call of Houston, Inc. v. Mulvey*, 343 S.W.2d 522 (Tex.App.—Houston 1961, no writ), is controlling. There, the plaintiff was employed by the defendant under a contract specifying that either party could terminate the employment by giving ninety days notice. 343 S.W.2d at 523. When problems developed in the relationship, each party requested the other to set a termination date. *Id.* In a formal notice of termination, the defendant suggested a thirty-day period. *Id.* One month later, the defendant gave the plaintiff two checks, one for his regular monthly salary and one for his car expenses, both marked "account in full." *Id.* The court held the defendant did not prove accord and satisfaction as matter of law because there "might have been a misunderstanding on the part of [the plaintiff] whether ... the word 'account' referred to the past dealings of the parties only, or whether it was intended also to include future liabilities that might arise under the contract...." *Id.* at 525. Under the plain language of the January 22, 1987, agreement, we conclude there could not have been a similar misunderstanding on the part of Hycarbex in this case.

■■■■ Second, Hussain's testimony about his understanding of the January 22, 1987, agreement is immaterial. Only where the contract is first found to be ambiguous may the court consider the parties' interpretation. *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 732 (Tex.1981). Where the meaning of the contract is plain and unambiguous, a party's construction is immaterial. *Id.* As we discussed, the January 22, 1987, agreement is plain and unambiguous.

■■■■ Finally, Hycarbex argues the parties' agreement as to future commissions is not supported by consideration. A good faith dispute as to liability on either a liqui-

dated or unliquidated claim furnishes sufficient consideration for an accord and satisfaction. *Industrial Life*, 382 S.W.2d at 104; *Vann v. Western Data Centers, Inc.*, 532 S.W.2d 419, 421 (Tex.App.—Texarkana 1976, no writ): *Dickson v. Stockman*, 411 S.W.2d 610, 613 (Tex.App.—Texarkana 1966, writ ref'd n.r.e.). Hycarbex asserts there was no dispute about future commissions. During the negotiations with Phillips/IFC, Labbe told Hussain that Anglo–Suisse was "in deficit" and "owed him nothing under his commission." Hussain was "stunned" by this assessment and communicated his disagreement to Labbe. Thus, while the parties did not specifically discuss future commissions, the parties clearly disputed whether **any** commission, past or future, was due Hycarbex under the April 10, 1985, agreement. In fact, Hussain admitted he thought the April 10, 1985, agreement called for a commission on each sale of a working interest but that he signed the January 22, 1987, agreement knowing Anglo–Suisse thought the payments contemplated by that agreement would be for "complete payment" of Hycarbex's commission.

■■■■ Of course, it is not necessary to resolve the parties' underlying dispute to determine whether the accord and satisfaction is supported by consideration. Rather, consideration for an accord and satisfaction is found in the resolution of the uncertainty which exists as to the validity or the amount of a claim. *See Dickson*, 411 S.W.2d at 613. In other words, the very existence of the dispute is the consideration for the accord and satisfaction. Here, the parties resolved their dispute when Anglo–Suisse paid, and Hycarbex accepted, $60,000 as "complete fulfillment of [Anglo–Suisse's] obligation."

Because Anglo–Suisse established accord and satisfaction as a matter of law, the trial court properly granted a directed verdict. Accordingly, point of error three is overruled. Having determined that Anglo–Suisse was entitled to a directed verdict on grounds of accord and satisfaction, we need not address Hycarbex's first and second points of error challenging the directed verdict on breach of contract grounds.

In points of error four and five, Hycarbex contends the trial court erred by quashing the deposition of Anglo–Suisse's chief financial officer, Joseph Summa, and denying its motion for continuance. Anglo–Suisse moved to quash Summa's deposition, which was taken on four days notice one week before trial without the presence of Anglo–Suisse's counsel. After the deposition was quashed at a pretrial hearing, Hycarbex moved for a continuance to re-take the deposition or until Summa could appear and testify at trial.

■ According to Hycarbex's motion for continuance, Summa testified by deposition "that the alleged costs of the Pakistan concession used by the Defendants in denying a commission to the Plaintiffs were either inflated, did not occur, or were reimbursed by third parties who had shares in ... [Anglo–Suisse]." That testimony neither mentions nor concerns accord and satisfaction which, as we have held, was established as a matter of law. In fact, the record reflects that Summa left Anglo–Suisse sometime in late 1986, before the January 22, 1987, agreement. Thus, Summa's deposition testimony while relevant to the breach of contract claim, is immaterial to the issue of whether there was an accord and satisfaction. Accordingly, any error by the trial court in excluding Summa's deposition testimony was harmless. TEX.R.APP.P. 81(b)(1); *see* *McCraw v. Maris*, 828 S.W.2d 756, 757–58 (Tex.1992).

■ Even if Summa's testimony is somehow relevant, the trial court did not err in quashing the deposition or denying a continuance. The determination of whether a deposition should be taken is within the sound discretion of the trial court. *Thompson v. Dart*, 746 S.W.2d 821, 828 (Tex.App.—San Antonio 1988, no writ). The trial court has broad powers and discretion to control the time, place, and manner of taking depositions. *Id.* Rule 200 of the Texas Rules of Civil Procedure requires a party to give reasonable notice of a deposition. TEX.R.CIV.P. 200(2)(a). Whether notice is reasonable depends on the circumstances of each case. *Hogan v. Beckel*, 783 S.W.2d 307, 308 (Tex. App.—San Antonio 1989, writ denied). Discovery sanctions are available against those who abuse the rule. *Bohmfalk v. Linwood*, 742 S.W.2d 518, 520 (Tex.App.—Dallas 1987, no writ). The choice of permissible sanctions is within the discretion of the trial court. *See Hogan*, 783 S.W.2d at 309 (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985), *cert denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986)).

■ The record reflects that Hycarbex's attorney knew at least five months before trial that Summa's deposition was necessary because Summa frequently traveled overseas on business. However, counsel deliberately chose not to depose Summa during this five-month period because Summa assured counsel that he would be available for trial. Approximately two weeks before trial, Hycarbex's attorney learned, as he had all along feared, that Summa would be overseas during the trial. He immediately contacted Anglo–Suisse's attorney, who due to scheduling conflicts, was unable to attend any deposition scheduled prior to Summa's departure date. Unable to reach an agreement with Anglo–Suisse's attorney on a date, Hycarbex noticed Summa's deposition for a Saturday, four days later. Anglo–Suisse filed a motion to quash one day after receiving the notice and set it for the earliest possible hearing date. Hycarbex's attorney proceeded to take Summa's deposition on four days notice, one week before trial. Unable to prepare for the deposition or secure the attendance of his client on such short notice, Anglo–Suisse's attorney did not attend the deposition.

At the pretrial hearing on Anglo–Suisse's motion to quash, the trial court found that Hycarbex's attorney could have taken Summa's deposition without such short notice and granted Anglo–Suisse's motion. The court's ruling was reasonable under the circumstances and not an abuse of discretion. *See id.* Relying on *Bohmfalk*, Hycarbex argues that four days notice is not unreasonable *per se.* 742 S.W.2d at 520. However, in *Bohmfalk*, the deposition was taken several weeks before trial and the party opposing the admission of the deposition waived error by waiting until trial to protest the deposition notice. *Id.* As we described, the deposition was taken on four days notice only a week before trial. Although it could not obtain a

hearing until the trial date, Anglo–Suisse filed its motion to quash the day after receiving the notice of deposition. Thus, we hold the trial court did not abuse its discretion in granting the motion to quash. *See Hogan,* 783 S.W.2d at 309; *Thompson,* 746 S.W.2d at 828.

■■■ Likewise, the trial court did not abuse its discretion by denying Hycarbex's motion for continuance. The granting or denial of a continuance rests within the sound discretion of the trial court. *State v. Crank,* 666 S.W.2d 91, 94 (Tex.1984), cert. denied, 469 U.S. 833, 105 S.Ct. 124, 83 L.Ed.2d 66; *Hernandez v. Heldenfels,* 374 S.W.2d 196, 202 (Tex.1963). The action of the trial court in denying a continuance will not be disturbed unless the record discloses a clear abuse of discretion. *Crank,* 666 S.W.2d at 94. The trial court found that Hycarbex's attorney acted "at his peril" by relying on Summa's assurances rather than deposing Summa when he knew five months earlier that Summa's deposition was necessary to preserve Summa's testimony for trial. Where a party elects to employ other means than those provided by law to assure that a witness appears to testify at trial, it will be at his peril. *Elizondo v. Tavarez,* 596 S.W.2d 667, 669–70 (Tex.App.—Corpus Christi 1980, writ ref'd n.r.e.) (holding that trial court did not abuse its discretion in denying plaintiff's motion for continuance where plaintiff's counsel knew of trial setting six months earlier, but relying on witness's assurances, made no attempt to contact the witness until two weeks before trial). We hold the trial court did not abuse its discretion.[5] *See Crank,* 666 S.W.2d at 94. Points of error four and five are overruled. Accordingly, the trial court's judgment is affirmed.

■■■

**5.** Hycarbex suggested below that "good cause" existed for "getting out the deposition notice at the late time in the case." Hycarbex does not raise this issue on appeal and therefore it is waived. Tex.R.App.P. 74; *see e.g., Emery v. Rollins,* 880 S.W.2d 237, 238 (Tex.App.—Houston [14th Dist.] 1994, writ denied). Even if the issue were before this court, the record does not establish "good cause." As we stated, Summa's testimony has no bearing on the issue of accord and satisfaction. Further, the deposition of a witness on four days notice, one week before trial and after the deposing party deliberately failed to take the witness's deposition during the preceding five months, is not "good cause." *See generally, Alvarado v. Farah Mfg. Co., Inc.,* 830 S.W.2d 911, 914–15 (Tex.1992) (elaborating on the standard for "good cause").